W. J. Costigan v. Anna B. Stewart et al.
No. 15,169.   (91 Pac. 83.)
SYLLABUS BY THE COURT.

Attorneys—Fees—Lien on Fund Recovered in a Bastardy Proceeding. An attorney who is employed by the mother of an illegitimate child to assist in the prosecution of bastardy proceedings, under a contract by which he is to be paid an attorney's fee out of the fund recovered, is entitled to a lien upon such fund for his fees.

Error from Franklin district court; CHARLES A. SMART, judge. Opinion filed July 5, 1907. Reversed.

Benson & Harris, and Ferry & Doran, for plaintiff in error.

J. W. Deford, for defendant in error W. B. Kiler.

The opinion of the court was delivered by

PORTER, J.: The only question here is whether an attorney employed by the mother to assist in the prosecution of bastardy proceedings is entitled to a lien for his fees upon the money judgment recovered in the proceeding against the father.

Emanuel B. Stewart was convicted in the district court of Franklin county of being the father of a bastard child born to Anna B. Stewart. Defendant was required to pay the sum of $1200 for the support and maintenance of the child. On the order of the court, W. B. Kiler was appointed trustee of the fund,

23—76 KAN.

which defendant at once paid into court. W. J. Costigan was employed by the prosecuting witness to assist the county attorney in the prosecution, and appeared in the proceedings before the justice and in the district court. She agreed to pay him as an attorney's fee one-third of the amount recovered. It appears that an offer of $500, made by defendant while the case was pending, would have been accepted by the prosecuting witness in full settlement of the matter except for the advice of Mr. Costigan, and there is no question that he performed the services for which he was retained. When the order was made appointing a trustee for the fund Mr. Costigan informed the court of his contract and asked to have his fee paid out of the fund. The court stated that the fund was still in the hands of the court and required Mr. Costigan to make a formal application, with proof. This was done, and a hearing was had upon affidavits, the trustee resisting any allowance of fees, while the mother of the child filed her affidavit stating that she had employed Mr. Costigan with the understanding that he was to receive one-third of the amount recovered and that she desired the fee paid to him. The court refused to make the allowance and held that the attorney was not entitled to any lien upon the fund for his fees. Mr. Costigan has brought the case to this court on error.

Courts have never doubted their authority to allow, nor hesitated to give, to an attorney a lien for his fees upon a fund which his labors have created or assisted to bring into existence, unless some consideration of public policy or other special reason stood in the way of such an equitable allowance.

There is nothing analogous in the doctrine of the cases which refuse an attorney a lien, upon money paid as alimony, for his fees for procuring the allowance. We have no quarrel with the principles announced in the case of *Jordan v. Westerman,* 62 Mich. 170, 28 N. W. 826, 4 Am. St. Rep. 836, or *Lynde v. Lynde,* 64 N. J. Eq. 736, 52 Atl. 694, 58 L. R. A. 471, 97 Am. St.

Rep. 692, which are cited by defendant in error Kiler. There are valid reasons which control cases of that character but have no application to the present case. In the former case Westerman, the attorney, collected $4500 alimony, allowed to the wife by the court, and retained one-half. In the Lynde case the amount was $41,000 and the attorney claimed and retained one-half. In each case the court compelled the attorney to relinquish his claim upon the fund and pay the whole sum to his client, because public policy will not uphold a contract which tends toward the separation of husband and wife and which seeks to prevent the adjustment of marital difficulties. Besides, the court always has power to award fees to the attorney for the wife, and, in each of the above cases, it was held that a fraud had been practiced in withholding from the court the object and purpose for which the allowance was to be used.

While the proceedings are carried on in the name of the state, and the statute provides for the arrest and imprisonment under certain circumstances of the person charged with being the father of an illegitimate child, the rules of evidence and the procedure are governed by the law regulating civil actions. The proceeding is therefore more in the nature of a civil action. The right to prosecute has been held optional with the mother. (*The State, ex rel., v. Young,* 32 Kan. 292, 4 Pac. 309.) Not only this, but she controls the prosecution and may without let or hindrance accept satisfaction and dismiss the proceedings. (*Moore v. The State, ex rel.,* 47 Kan. 772, 28 Pac. 1072, 17 L. R. A. 714; *Poole v. French,* 71 Kan. 391, 80 Pac. 997.) In the opinion in the latter case it was said:

"The prosecution is under the direction of the relatrix; she may accept satisfaction and dismiss the action. (*Gleason, Sheriff, v. Comm'rs of McPherson Co.,* 30 Kan. 492, 2 Pac. 644; *The State v. Baker,* 65 Kan. 117, 69 Pac. 170.) The money judgment is collectable by her, and her only, if she be alive. Whether it be called an action or a special proceeding

matters little. It is being prosecuted by a party who has a right under the statute so to prosecute against another party, who is called a defendant, for the enforcement of a right given to her by the statute." (Page 394.)

Defendant in error Kiler also cites the note to the case of *Crafts v. Carr*, 24 R. I. 397, in 96 Am. St. Rep. 721, 731, as to the liability of an infant for attorney's fees as necessaries furnished in actions brought in his behalf. None of the cases in the note is in point, for the reason that the service for which the allowance in this case is asked was not performed for or on behalf of the infant but on behalf of the mother, who entered into the contract of employment. It is beside the whole question to contend that, because the judgment is in theory to be used for the support and maintenance of the child, the mother cannot out of the amount recovered pay to an attorney his fee for prosecuting the action. The statute makes no provision with respect to the manner in which the mother shall expend the money. When it is paid to her she may, so far as the statute is concerned, use it for any purpose of her own —may buy jewelry with it—notwithstanding the fact that her statutory right to maintain the action is based upon the theory that she is entitled to receive assistance from the father for the support and maintenance of the child. She has the statutory right to prosecute the action and recover although she may have independent means of her own, or even though the child has already been amply provided for. The fund recovered is hers for any and all purposes, and the child has no legal claim upon it or direct interest in it.

It is argued, however, that the mother has no pecuniary interest in the judgment, and it is said her only interest in the proceeding is to establish the parentage of the child. Such is not the law under our statute as declared by this court. In numerous former decisions the pecuniary interest of the mother in the

fund has been recognized.  In *The State, ex rel., v. Reed,* 46 Kan. 501, 26 Pac. 956, the trial court gave an instruction that the mother was a mere witness and in effect not pecuniarily interested.  This court said:

"This instruction is faulty in several respects.  It states that the mother has no pecuniary interest in the support of her child.  This statement could only have been made by the trial court upon the assumption that the mother of a bastard child is in no way responsible, under the law, for the support of such child.  This is not the law.  Under the law, the mother of an illegitimate child is all the while known, and is at all times, at least during its infancy, liable for its support, while the father of such child is unknown until ascertained by judicial proceedings, unless he acknowledge its paternity; and, therefore, he is liable only when the paternity of the child is acknowledged by him, or it is established by judicial inquiry.  And when the paternity of the child is established by the judgment of the court, the law does not relieve the mother from liability for the support of her child; but compels the father, thus ascertained, to contribute his share to the support of such child.  The mother must still do her part toward caring for and supporting her child.  And again, so far as the judicial inquiry is concerned, the mother, who under the law must alone support her illegitimate child, unless its paternity is ascertained by such inquiry, has an interest in the result of the proceeding, to the full extent of the contribution the court requires the accused, if found to be the father of her child, to make toward its support; and that is the measure also of the pecuniary interest the accused has in the inquiry."  (Page 502.)

In *Moore v. The State, ex rel.,* 47 Kan. 772, 28 Pac. 1072, 17 L. R. A. 714, it was held that the mother might maintain the action although she as well as the child was a resident of Illinois.  In the opinion it was said:

"The enforcement of the statute by the mother both protects the municipality from the burden and makes the putative father contribute material aid to the mother in the maintenance and education of their illicit offspring.  Our legislation has partaken very

largely of this tendency. It seems that such proceedings can be instituted alone on the complaint of the mother. The money is to be paid to her, unless it appears that she is an improper person. She can at any time dismiss the suit, if she enters of record an admission that provision has been made for the maintenance of the child to her satisfaction. Such an entry is a bar to all other prosecutions for the same cause and purpose. Sections 19 and 21 of the act seem to be conclusive against the view that the sole purpose of the proceeding is to protect the public, for it provides that 'in case of the death of the putative father of such child, the right of action shall survive against his personal representatives, and the death of the bastard child shall not cause the abatement of the proceedings.' If the sole or principal object of the statute is to protect the public from the maintenance of the child, the proceedings would abate with the death, for with the death the necessity for the statute would cease to exist." (Page 783.)

In *Kolbe v. The People*, 85 Ill. 336, it was held that the mother is chiefly interested. The Illinois statute is substantially the same as ours.

In Minnesota, notwithstanding the mother is not given the sole right to institute the proceedings, hers is recognized as the chief interest and as pecuniary. (*State v. Zeitler*, 35 Minn. 238, 28 N. W. 501.) Again, the same court in another case, after referring to the duties and obligations of the mother to rear and maintain the child, and the statutory duty of the putative father to aid her in this respect, said:

"Now, with these rights, duties and obligations pertaining to the mother and father of a bastard child, how can it be reasonably said that the complaining mother has no pecuniary interest in the result of the suit. One of the objects of the statute is to compel him to pay to her such sum of money or other property as she may agree to receive in full satisfaction. Such is the language of the statute." (*State v. Nestaval*, 72 Minn. 415, 417, 75 N. W. 725.)

The pecuniary interest of the mother and her right to begin, direct, control, settle or dismiss the proceed-

ings are not shared by her with any other person; and it would seem to follow necessarily that she may contract for the employment of an attorney to assist the county attorney in prosecuting the action and provide for his payment out of the fund. No valid reason can, we think, be suggested against her right to do this. It is incidental to the right to institute and control the action.

The argument advanced so strenuously that no person can bind the estate of an unborn child, and therefore the mother is powerless by contract to create a lien upon the fund, falls when it is seen that the judgment is not a part of the child's estate. The mother is not the trustee of the fund for the child, and has not only the optional right to institute the suit and control it after it is instituted, but she receives the sum awarded in the judgment with the sole right of disposition. The argument would apply with equal force to the claim that the mother could not compromise or accept satisfaction and dismiss the proceedings. If the child has the vested interest, and the mother is only the trustee acting for it, she could not, by accepting a grossly inadequate sum, prejudice the child's interest. But, as we have seen, her right to institute, control or compromise the prosecution is without reference to any supposed right of the child in the fund.

It was said in argument that if the child should die defendant would have a right to an order of the court refunding to him any unexpended balance that the court might deem proper in consequence of such death, and it was argued that therefore the mother never got title to the fund. Section 3337 of the General Statutes of 1901 provides for such a case where the judgment is to be paid in instalments and the child dies before the last payment. It is sufficient to suggest that after the attorney's fee is paid it has been expended, and, of course, would not be part of an unexpended balance.

It is our opinion that it was error to refuse the allowance of the fees of the attorney, and that they were properly a charge upon the fund. The cause is therefore reversed and remanded, with directions to order payment of the fee to plaintiff in error.