LULU TAYLOR v. C. LAWRENCE STULL, APPELLANT; BYRON CLARK, APPELLEE.

FILED APRIL 9, 1910.　No. 16,459.

1. **Appeal: LAW OF CASE.** The determination of questions presented to this court in reviewing the proceedings of the district court becomes the law of the case and ordinarily will not be reexamined in a subsequent appellate proceeding.

2. **Bastards: JUDGMENT: ENFORCEMENT.** The provision of the statute which requires a reputed father to give security to perform the order of the court, and the further provision that, in case he neglect or refuse to give such security and pay the costs of prosecution, he shall be committed to the jail of the county, to remain till he shall comply with the order of the court, are cumulative remedies, and the plaintiff in a bastardy suit is not limited thereby in the use of all the means to which resort may be made to enforce the payment of judgments in ordinary cases.

3. ———: ———: ———. And in such a case, where the defendant is in default of payment of any instalment due under the judgment of the court, said judgment, as to such past due instalment, may be enforced by execution, as in other cases.

4. ———: ———: MODIFICATION. A judgment in bastardy proceedings, requiring the defendant to pay for maintenance a given sum at stated periods, is subject to the future order of the court

discontinuing the payments, upon a showing that maintenance is no longer necessary.

5. ——: ORDER FOR CARE AND CUSTODY: EFFECT. The fact that by proceedings under the statute the care and custody of a bastard child shall by order of the court be awarded to some third person, or to a children's home, for the purpose of providing such child with a suitable home where it may be educated, clothed and properly brought up, is immaterial when it further appears that said child has not been actually taken into the custody of such third person or children's home, but has at all times remained with the mother.

APPEAL from the district court for Cass county: HARVEY D. TRAVIS, JUDGE. *Affirmed.*

*Matthew Gering* and *A. N. Sullivan,* for appellant.

*Byron Clark* and *W. A. Robertson, contra.*

FAWCETT, J.

This is the second time this case has been before us. Our former opinion, reported in 79 Neb. 295, contains such a full and accurate statement of the case that none further need be made. On retrial in the district court a decree was entered establishing the attorney's lien of Byron Clark, intervener, in the sum of $485, with interest from September 10, 1901, and awarding intervener an execution therefor. From this decree defendant appeals.

We will consider defendant's points in the order in which they appear in his brief. His first point is a repetition of his contention at the former hearing that "in a bastardy proceeding an attorney's lien should not be allowed to exist." This point was decided adversely to defendant on the former hearing, and no good reason has been advanced why it should be again considered.

The second point is: "The court had no power to direct execution against the property of the appellant." This we think is the only real question for consideration. As stated in the former opinion, the judgment as originally

entered against defendant was in the sum of $1,800. This judgment defendant attempted to compromise with the plaintiff, Taylor, on September 10, 1901, by the payment of $1,000. This settlement was set aside, and on December 4, 1901, the district court entered an order that the said sum of $1,000 be applied upon the original judgment; that there still remained of said judgment unpaid $800, and ordered defendant to give a new bond for $1,600, conditioned for the payment of said remaining $800 and costs; requiring payments to be made to the clerk of the court for the benefit of plaintiff, and finding that said payments should begin June 1, 1905, and continue at the rate of $15 a month, payable quarterly thereafter until the full sum of $800 should be paid. It is admitted that this order of the court has never been appealed from, and it must therefore be treated as a final determination of the amount of the payments still to be made by defendant and of the time when such payments should begin. It is also admitted that no part of the said $800 has been paid by defendant. The decree appealed from in the matter at bar was entered January 25, 1909. It thus appears that at the time of entering such decree defendant was in default of the quarterly payments of the monthly allowance for three years and seven months. The amount actually due from defendant to plaintiff would therefore be considerably in excess of the amount of intervener's lien. It is contended by defendant that "nowhere in the (bastardy) act, or by any interpretation of it by this or any other court, can it be collected or enforced by execution. The act provides that upon a conviction the court shall adjudge the amount to be paid, which may be enforced by imprisonment, or by the execution of a bond for the performance of the judgment. This remedy is conclusive, adequate and certain. Such a bond has been given, and if there are any payments unpaid the remedy is by a suit upon the bond, and not by an execution against the appellant or his property." In this contention we are unable to concur. While we concede that decisions may be found sustaining de-

fendant's contention, we think both reason and the weight of authority are against him.

In *Commonwealth v. Snyder*, 4 Pa. C. C. R. 261, an application was made to set aside a *fi. fa.* issued to compel the payment of a fine, costs of prosecution, and lying in expenses, etc., under a decree of the court, upon the alleged ground that "there is no authority to issue said writ." After discussing several general acts of the assembly, the opinion states: "Under these several acts of assembly, it seems to us the power of the court of quarter sessions to award process to collect the fines, etc., by writ of *fi. fa.* cannot be questioned. This is the appropriate writ coming down to us from the common law by which to levy and collect any debt that may be due either the commonwealth or an individual. * * * If defense had been taken upon the ground that the fine, costs, and debt had been paid, we would then have made provisions for some issue in which the question of payment could have been determined. It was, however, admitted upon the argument and not denied by the defendant, that nothing had been paid. So that the only defense left to the defendant is the technical one referred to herein. This defense comes with bad grace from one whose whole duty should have been to provide support for his own offspring, even though he may repudiate the mother who gave it birth. Until better reasons are shown, we will hold this father to the slight duty imposed upon him by the decree of the quarter sessions. We therefore hereby approve and confirm the issuing of said writ of *fi. fa.*, with same effect as if the former decree had been formally written out and entered upon record, which, though an oversight, was neglected to be done prior to the issuing of the writ, but which writ was issued upon the direction of the court. And we further dismiss the rule to set aside the *fi. fa.* at the costs of the defendant."

In *McLaughlin v. Whitten*, 32 Me. 21, the court say: "If the mother should recover judgment after the liberation of the father of the child from the imprisonment

caused by his neglect to provide the bonds, according to the order, she is not limited by the statute, giving her the remedy, in the use of all the means to which resort may be made to enforce the payment of judgments in ordinary cases."

In *Lessee of Darby v. Carson*, 9 Ohio, 149, in considering a statute exactly like ours, the court, in the syllabus, say: "Such order may be enforced by execution as in other cases, the security given under the act being resorted to only in case of the inability of the defendant." In the opinion, on page 151, the court say: "But it is said, the security by bond in these cases takes the place of execution, and that the only remedy upon the judgment, is upon the bond. This by no means follows. We think the bond and security only intended as a resort, after an ineffectual attempt to obtain satisfaction by execution. This is analogous to our general policy to subject the security only in case of the inability of the principal debtor." This holding of the Ohio court is so squarely in point and appeals to us as so sound in reasoning that we shall not pursue the authorities further.

As stated by the supreme court of Maine in *McLaughlin v. Whitten, supra,* we think that plaintiff, or intervener, who for the purpose of this case stands in her shoes, "is not limited by the statute, giving her the remedy, in the use of all the means to which resort may be made to enforce the payment of judgments in ordinary cases", the speediest of which, when the judgment debtor is a man of property, is well known to be the writ of execution. We therefore hold that the trial court did not err in awarding intervener an execution for the amount of his lien, the record showing that there was then actually due and unpaid from the defendant to the plaintiff more than sufficient to satisfy the same. While there may be some question as to the correctness of that part of the judgment of the court which provided that, in the event the amount then due should not be sufficient to pay the lien, execution

40

should issue for subsequent payments as they respectively became due, until the lien of intervener is paid in full, that matter is immaterial here, as there was then past due and unpaid sufficient to satisfy it.

Defendant's third point is: "The attorney's lien cannot attach to the judgment because the same has been fully satisfied and abated." This contention is entirely without support in the record. It is admitted that defendant has not paid any portion of the $800, but defendant contends that on December 14, 1905, proceedings were had under the statutes of this state, and on behalf of the state, against plaintiff Lulu Taylor for the custody not only of the son Ira, for the support of whom the original judgment was entered, but also for three other children of plaintiff (all of whom the evidence shows were the illegitimate children of defendant), which resulted in a judgment that said children "shall forthwith be placed in the hands of the Nebraska Children's Home Society of Omaha, Nebraska, for the purpose and to the end that suitable homes may be found for said children, where said children may be educated, clothed and properly brought up." Authorities are cited and an able discussion made in the brief that this proceeding absolved both plaintiff and defendant from all obligations to support and maintain these illegitimate children. This whole argument must fail, for the reason that the child, Ira, has never been taken into custody by the society under the judgment above referred to, but, so far as the record shows, has at all times remained with his mother, except for the period of a month or two prior to the time this suit was heard on June 13, 1908. Upon that point the defendant testified as follows: "Q. What is this boy's name over whom the suit was had here? A. Ira. Q. How old is he? A. Going on fifteen. Q. Where has he been in the last year or two? A. He has been at my place most of the time. Q. You may state what he is doing there. A. He is farming. He came out there last spring. Before that he was living here in town. Q. You may state if he is earning wages now, and, if so, how much?

A. He is; he is getting $12 a month.  He has been getting that ever since this spring." This testimony was given on June 13, and if the boy came there "this spring", it is apparent that he had not been with the defendant to exceed two or three months.  But even if he had been with defendant for a considerable portion or all of the time after the judgment of the court entered December 4, 1901, that would not absolve defendant from liability to pay the amount of the judgment.

In *Directors of the Poor v. Dungan,* 64 Pa. St. 402, the court say: "It having become a public charge by his default, and the condition of the bond being broken, and the sentence of the court disobeyed, what claim has he to demand a new contract and impose new terms?  He does not propose to satisfy the condition of the bond by payment or a deposit of a sum equivalent to the requirements of the sentence, but merely to make a new arrangement. Now, clearly it is not for him to dictate the terms of his responsibility, they have already been fixed by the judgment of the court.  Although the putative father, no responsibility rests on him beyond the consequences of his conviction, and that is but for a limited period.  The child is *nullius filius.*  A duty has been imposed upon him by law, which he is to perform *sub modo,* and no reciprocal right springs out of such duty.  This being so, having none as father, he is without remedy.  The sentence of the court was inflicted upon him as a punishment and with a view to indemnification; neither it nor the conviction gave him any right of control, nor did either give the child any rights beyond what are specified."

If anything had occurred which should excuse defendant from making further payments, as required by the judgment, his release could only be obtained by a further order of the court.  That the court has power, upon a proper showing, to make such an order cannot be doubted.  *State v. Eichmiller,* 35 Minn. 240.

In any view of this case, we think the judgment of the district court is right and should be affirmed.  The pro-

vision of the statute which requires a reputed father to give security to perform the order of the court, and the further provision that, in case he neglect or refuse to give such security and pay the costs of prosecution, he be committed to the jail of the county to remain until he shall comply with the order of the court, should be regarded as cumulative remedies. The judgment of the court required the defendant to pay a certain definite sum of money to plaintiff, and we think the court has full power, where it is made to appear that the defendant is in default in the payment of any instalment so ordered to be paid, to award execution therefor. The money for the support of the child is the important consideration. The mother, as in the present case, may be in dire need. To fail to pay the instalments when due might cause suffering, not only to the partner of defendant's shame, but to their innocent offspring. Imprisonment in the county jail might not bring the money speedily. The bad blood engendered by the bastardy proceeding might make the defendant obstinate. He might choose to lie in jail for an indefinite period rather than pay the money. A suit upon the bond would not speedily bring the money. The law's delays are such that the mother and child might die of starvation before such a case could be reduced to a judgment and execution thereon be obtained. Bonds are at best uncertain security. To deprive the court in cases of this kind of the power to award execution for the enforcement of its judgment would deprive it of its only effective and speedy method of providing for the immediate needs of the unfortunate woman and her still more unfortunate child. We are not willing to so hold.

The judgment of the district court is

AFFIRMED.

ROOT, J., not sitting