## HAMPTON v. HAMPTON et al.

No. 4878. Decided January 5, 1935. (39 P. [2d] 703.)

*H. A. Belnap,* of Ogden, for appellant.

*Benjamin Spence,* of Salt Lake City, for respondent.

*Richards & Mitchell,* of Salt Lake City, for defendant.

STRAUP, Chief Justice.

Belnap, an attorney at law, was employed by Zora W. Hampton to prosecute an action for divorce against her husband, Walter M. Hampton. She paid her counsel $10 to apply on attorney's fees when the action was commenced, and later paid him an additional fee of $10, $5 of which was paid out by him for costs. Hampton was employed as a teacher in the public schools of Salt Lake City with a salary and income of about $160 a month. Belnap prosecuted the action to final judgment. The plaintiff was granted a decree of divorce, the custody of a minor child, $60 a month as and for permanent alimony for the support of herself and of the child, and in addition thereto, as ordered by the decree, received a promissory note in the sum of $500 executed by the defendant and payable to the plaintiff, and $75 attorney's fees. The decree was entered September 28, 1928. The attorney's fees and costs were to be paid forthwith, the alimony to be paid in monthly payments. The defendant paid $180 on alimony direct to the plaintiff. He failed to pay the attorney's fees or costs or any part thereof. An execution was issued which was returned unsatisfied. The defendant's employer, the board of education, was garnished. Defendant answered, setting up a discharge in bankruptcy. Apparently the garnishment was not further pursued.

Plaintiff's attorney served and filed a notice of claim of lien on the judgment and the proceeds thereof in the divorce action. Later, on stipulation entered into by and between him, while he was still plaintiff's attorney of record, and the defendant and his attorney, an order of court was entered in the cause January 5, 1929, requiring

the defendant to pay the alimony to the clerk of the court to be withdrawn by the plaintiff or by her attorney of record. A few days thereafter, Hampton, in obedience to such order, paid a monthly payment amounting to $60 to the clerk of the court. Belnap, still plaintiff's attorney of record and in accordance with the order, withdrew the $60 as and for or to be applied on his fees in the cause. The plaintiff learning thereof, complained to one of the judges of the district court, claiming that such moneys were withdrawn without her consent or authority, whereupon the judge on his own motion, and without the filing of an affidavit or petition, on January 9, 1929, issued a citation requiring plaintiff's attorney on January 12th to show cause why he should not return to the plaintiff the $60 so withdrawn by him. On the 12th, the attorney appeared and moved to quash the citation. But on that day plaintiff filed an affidavit in support of the citation. The motion to quash was overruled. Plaintiff's attorney on the 14th filed an affidavit in answer to plaintiff's affidavit. Thereafter the matters in issue presented by the affidavits came on for hearing before the court; both parties giving oral testimony with respect thereto. The testimony so taken and the proceedings had and the rulings and orders made therein are preserved by a bill of exceptions. The affidavits were not embodied in the bill. I think they were not required to be. They constituted the documents in the nature of pleadings presenting the issues which the court heard and tried, analogous to pleadings in a regular cause presenting issues to be heard and tried, and in effect constituted the initial documents or pleadings invoking jurisdiction to hear and determine the controversy between the parties. Upon so hearing the matter and upon a submission thereof, the court, being fully advised in the premises, on March 8, 1929, entered an order that Belnap forthwith return to plaintiff, Mrs. Hampton, the sum of $60 theretofore withdrawn by him. From that order Belnap has prosecuted this appeal.

The substance of the affidavit of plaintiff is that she obtained a decree of divorce; that Belnap acted as her attorney; that he agreed with her he would look to the defendant for his fees; that without her knowledge or consent he procured the order of court permitting him to withdraw moneys paid to the clerk of the court, and withdrew $60 thereof, and converted the same to his own use; that she made demand for its return; and that he refused to do so.

The affidavit of Belnap is rather lengthy, but, so far as material, the substance is that the plaintiff sought his employment because of legal services theretofore rendered by him for her husband and because thereof she felt he, better than any one else, was familiar with the affairs between her and her husband; that Belnap advised her that her husband had not paid him for services theretofore rendered by him amounting to $150, and that he could not work for nothing; that she informed him, if he took the case, she herself would pay him his fees, and agreed to do so; that she paid him $10 to apply on fees and later paid him $10 more, of which he paid out $5 for costs. He further deposed concerning the nature and character of services rendered by him which are not disputed; that by execution and garnishment he had endeavored for and on her behalf to collect the attorney's fees from the defendant, but was unable to do so; that he served and filed in the divorce action a notice claiming a lien on the judgment and the proceeds thereof; that, after such service on the defendant, it was at the suggestion of defendant's counsel that the stipulation was entered into for an order requiring the defendant to pay the alimony to the clerk of the court and permitting the plaintiff or her attorney of record to withdraw the moneys so paid in; that, before he entered into the stipulation and withdrew the $60, he endeavored to notify the plaintiff, but was unable to do so, because she had changed her residence and address.

We find it unnecessary to more fully detail the substance of the testimony adduced by the parties at the hearing.

As we view the matter, the controlling feature of the case is reduced to rather a narrow compass: What was the agreement, either express or implied, between the plaintiff and her counsel as to compensation for services to be rendered by him, whether he had agreed with her that she was not obligated to pay him anything for fees unless collected from or paid to her by the defendant, or because of any agreement made by him with her that he was to look alone to the defendant for his compensation? As to that, Belnap testified positively that, while he advised the plaintiff that in obtaining a decree of divorce she would be entitled to an award for counsel fees, such a claim would be and was put in the complaint, but, for reasons stated by him to her, he could not and would not look to the defendant for his fees, whereupon she agreed herself to pay his fees, and in accordance therewith she on her first visit paid him $10 to apply on his fees, and later paid him $10 more, out of which he paid $5 costs.

The testimony of plaintiff on the subject is that, when asked at the hearing what, if anything, on her first visit with Belnap was said between them in relation to attorney fees, she answered:

"A. Yes, I asked him the first day I went up there if Mr. Hampton shouldn't be held responsible for attorney's fees, he said 'absolutely there was,' were his very words, the very first day I went up there I asked him that, he said 'absolutely.'"

When further asked if there was anything else said at that time or at any subsequent time in relation to attorney's fees, she answered:

"A. No. Q. Did you talk about attorney's fees any time subsequent or since that time?" to which she answered in the affirmative. "Right after the divorce. He asked me if a friend of mine wouldn't pay the attorney's fees, I said 'why look that direction for it' I said 'it isn't up to him (her friend) to pay those.' He said 'no, no, no,' he said 'just as soon as Mr. Hampton pays him (plaintiff's counsel) he will pay him (her friend) back,' to my knowledge those were the only two times attorney's fees were mentioned."

On cross-examination she further testified that it was discussed that $75 woud be a reasonable fee:

"Q. And in your complaint that should be set out, that amount should be set out as a reasonable fee, was it not? A. Yes sir.

"Q. Mr. Belnap stated to you, did he not, that amount would be included in the complaint as a reasonable attorney's fee? A. There wasn't a whole lot said about it.

"Q. You understood it was to be included in the complaint? A. Yes sir, I understood Mr. Hampton was to pay it.

"Q. He was to make application to the Court for allowance of $75.00 attorney's fees in that case? A. Yes sir.

"Q. Now, do you mean to tell this Court that Mr. Belnap stated to you at that time you wouldn't have to pay anything at all? A. I am stating just exactly the conversation, that is all that was said about it."

The proposition is quite clear even from the plaintiff's viewpoint. Because she was advised that in obtaining a decree of divorce she was entitled to an award for attorney's fees, that such a claim and demand was to be made in the complaint, and such award granted by the decree, she erroneously assumed that she was not under any obligation herself to compensate her attorney for services rendered for her, and that he was required to look alone to the defendant for his compensation. On the record, and by a preponderance of the evidence, it is quite clear that either by an express or an implied agreement she was obligated to compensate her attorney for services rendered by him. On the record no conclusion is justified that plaintiff's attorney, either expressly or impliedly, released her from any obligation on her part to compensate him for his services or that he expressly or impliedly waived any or all rights to look to her for his compensation. Further, it is highly improbable that any lawyer would make any such agreement of release or waiver, well knowing that he was not a party to the cause, the award for attorney's fees not running to him, and not enforceable for or on his behalf and enforceable only for and on behalf of his client and for her use and benefit.

Thus there was at least an implied, if not an express, agreement, as shown by a fair preponderance of the evidence, whereby the plaintiff became personally obligated to pay her attorney a reasonable fee for services rendered by him for her. In the absence of a statute, let it be conceded that an attorney in a divorce action has no lien either on the cause of action or on the judgment or on the proceeds thereof in favor of his client, but in this state we have an attorney's lien statute. It, R. S. Utah 1933, 6-0-40, provides:

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor and to the proceeds thereof in whosoever hands they may come, and cannot be affected by any settlement between the parties before or after judgment."

Still, the further question is, Does the statute apply to a divorce action and does the lien attach to the cause of action and to the decision or judgment and to the proceeds thereof in favor of the attorney's client? In considering cases on the subject, the similarity or dissimilarity of statutes creating an attorney's lien must be noted.. I grant there is some conflict in the authorities. However, we have here a broad and comprehensive statute on the subject of an attorney's lien. It applies to all causes of action, judgments, and proceeds thereof in favor of an attorney's client. It makes no exception. It applies to all clients, regardless of wealth or poverty or needs. It is based on the fruits and benefits the client obtained by or in the action because of services rendered by his attorney. Under such a statute, we think the weight of authority (A. & E. Ency. Law [2d Ed.] 456; *Putnam* v. *Tennyson,* 50 Ind. 456; *Hubbard* v. *Ellithorpe,* 135 Iowa, 259, 112 N. W. 796, 124 Am. St. Rep. 271; *Costigan* v. *Stewart,* 76 Kan. 353, 91 P. 83, 11 L. R. A. (N. S.) 630; *Taylor* v. *Stull,* 79 Neb. 295, 112 N. W. 577;

Id., 86 Neb. 573, 125 N. W. 1105), at least on principle, is to the effect that the lien attaches in all cases, including divorce actions. To say, as is said in some of the cases, that the lien attaches when the alimony is payable in a lump sum or when specific real or personal property is awarded, but not when alimony is payable in monthly or other designated periods, is to make a judicial distinction without a substantial difference, influenced perhaps by notions of the common law, or by "fireside justice" in the particular case—the client's need of the alimony awarded her or that the attorney should look to the defendant for his fees—but not justified by a statute such as here, and without considering that what the client obtained was the result of the services rendered by her counsel. There, too, are cases making a distinction between temporary and permanent alimony, denying a lien as to the former. We are not concerned with that. The alimony here paid to the clerk was permanent, not temporary, alimony.

No claim is made that the demanded fee was unreasonable or excessive or that there was any overreaching by plaintiff's counsel, other than as claimed he caused or joined in the procurement of an order of court, without the knowledge or consent of the plaintiff requiring the defendant to pay the alimony into the clerk's office and permitting the plaintiff or her attorney of record to withdraw it. But inasmuch, and as clearly appears by the record, the plaintiff did not propose or intend herself to compensate her attorney for any services rendered by him, though in law obligated so to do, and inasmuch as her attorney under the statute had a lien on the judgment and on the proceeds thereof, the procurement of the order was justified in aid of his lien.

Thus, since what the attorney withdrew did not exceed more than the fee to which he was entitled, and because of his lien had the right to claim and withdraw what was withdrawn by him, the order appealed from requiring him to return to the plaintiff what was so withdrawn should be

vacated and the proceedings dismissed. Such is the order. No costs.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.