[No. D026011. Fourth Dist., Div. One. Nov. 18, 1996.]

STACIE HOOVER-REYNOLDS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
COUNTY OF SAN DIEGO, Real Party in Interest.

**COUNSEL**

Purviance & Purviance, Farris C. Purviance III and Lorraine M. Purviance for Petitioner.

No appearance for Respondent.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Stephen E. Carr, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**McDONALD, J.**—In this action two parties made competing claims to certain moneys collected from the former husband of petitioner Stacie Hoover-Reynolds (petitioner). The moneys are past due child support payments owed by the former husband to petitioner. The first claimants, attorneys Purviance & Purviance (Attorneys), assert they are entitled to priority because petitioner had granted Attorneys a "charging lien" to secure payment of the fees petitioner owed Attorneys. The second claimant, the County of San Diego (County) through its district attorney, asserts it is entitled to the moneys based on an assignment by petitioner pursuant to Welfare and Institutions Code[1] section 11477 to County of petitioner's rights to past due spousal and child support owed by petitioner's former husband.

The issue is whether Attorneys' lien claim has priority over County's claim. The trial court found County was entitled to the moneys and ordered them disbursed to County. We conclude that an attorney's "charging lien" does not attach to funds paid for child support obligations and therefore the trial court's order was correct and we deny the writ petition.

### I.  *Factual and Procedural Background*

#### A.  *The Genesis of the Fund*

In 1994 petitioner filed for dissolution of her marriage to Michael S. Reynolds (husband). On January 16, 1995, petitioner signed a retainer agreement retaining the legal services of Attorneys. The retainer agreement contains the provision on which Attorneys rely for asserting they have a charging lien on any moneys awarded petitioner in the dissolution action.[2]

On February 23, 1995, the court ordered husband to pay petitioner $800 per month as family support. However, on October 4, 1995, the court modified its order effective October 1, 1995, to provide that husband pay petitioner $1,626 per month as child support. The court did not set any amount as spousal support and did not set the amount of arrearages as of that date.

In December 1995, petitioner sought a writ of execution to levy on husband's bank accounts. Petitioner claimed husband owed more than

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]The provision provides: "It is expressly agreed that [Attorneys] shall have a lien upon any money, whether support or otherwise, or property awarded or payable to you in this proceeding for any sums due under this [retainer agreement]. . . ."

$6,500 in unpaid child support. The court issued the requested writ and ordered that all amounts collected through enforcement of the writ be forwarded to County. The San Diego County Marshal levied the writ of execution and collected more than $4,600 (the fund).

### B. *The Competing Claims to the Fund*

Attorneys base their claim to the fund on the Attorneys' "charging lien" granted by the retainer agreement dated January 16, 1995. It is undisputed that the contractual predicate to the lien—unpaid attorneys' fees—is present here.

County bases its claim on the assignment dated August 10, 1995, executed by petitioner when she applied for and received Aid to Families With Dependent Children (AFDC).[3] Section 11477, subdivision (a) specifies that, as a condition of eligibility for AFDC, the applicant must assign to the county any rights to support owed the applicant or any other family member for whom the applicant is applying for aid. Section 11457 provides that when an assignment has been made pursuant to section 11477 any moneys owed by a noncustodial parent for child support shall be paid directly to the district attorney or his designee. Here County through its district attorney is the real party in interest, to which petitioner made the assignment.

### C. *The Trial Court's Ruling*

The San Diego County Marshal released the fund to Attorneys. Attorneys deposited the fund in their trust account and filed a motion seeking a declaration that they were entitled to the fund because their charging lien predated petitioner's assignment to County. County opposed the motion, arguing the Attorneys' lien could not attach to the fund because petitioner's section 11477 assignment divested petitioner of any interest in the child support payments and therefore petitioner had no rights to the fund against which Attorneys' lien could attach.

The trial court denied Attorneys' motion and ordered the funds released to County.

### II. *The Trial Court Correctly Denied Attorneys' Motion Because Public Policy Precludes an Attorney From Impressing a Charging Lien on Child Support Payments*

▮ Attorneys argue that under *Cappa* v. *F & K Rock & Sand, Inc.* (1988) 203 Cal.App.3d 172 [249 Cal.Rptr. 718] a preexisting attorney's charging

---

[3]The parties do not dispute that in mid-1995 petitioner applied for and received AFDC payments and as part of her application was required to and did assign to County all her rights to collect spousal and child support payments owed by husband during that period.

lien is entitled to priority over the lien of a subsequent judgment creditor even when the judgment creditor's claim seeks reimbursement for county-paid child support. The trial court rejected the argument, concluding *Cappa* did not apply because a charging lien can attach only when petitioner has rights to the funds, and petitioner's section 11477 assignment divested petitioner of any interest in the funds collected from husband. The trial court therefore denied Attorneys' motion and ordered the funds released to County.

We agree with the trial court's order for reasons different from those stated by the trial court. (*E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 511 [146 Cal.Rptr. 614, 579 P.2d 505] [appellate court will affirm a correct order whether or not ground on which trial court relied was correct].) We conclude that an attorney cannot impress a charging lien on funds owed the client by a third party to the extent those funds are payments of the third party's obligations for child support. Because Attorneys' lien here could not attach to the fund, Attorneys have no lien on the fund and petitioner's assignment to County was properly upheld by the trial court.

In California an attorney may ordinarily obtain a contractual charging lien for fees enforceable against the recovery obtained in the lawsuit the attorney prosecuted for his client. (*Haupt* v. *Charlie's Kosher Market* (1941) 17 Cal.2d 843, 844 [112 P.2d 627].) When the charging lien is created before the lien of a judgment creditor attaches to the recovery, the courts have held the charging lien has priority pursuant to the mandate of Civil Code section 2897 that "[o]ther things being equal, different liens upon the same property have priority according to the time of their creation." (See, e.g., *Cetenko* v. *United California Bank* (1982) 30 Cal.3d 528, 534-536 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657].)

However, we deal here with the special situation of whether a charging lien may attach to the recovery obtained by the attorney when that recovery is for child support. The parties have not cited, and this court has not found, any California authority on this question.[4] However, it appears the majority of states which have considered this question have concluded an attorney's lien does not attach when the proceeds are payments of court-ordered child

---

[4]The California cases cited by Attorneys are inapposite. In *Cappa* v. *F & K Rock & Sand, Inc., supra,* 203 Cal.App.3d 172 and in *Wujcik* v. *Wujcik* (1994) 21 Cal.App.4th 1790 [27 Cal.Rptr.2d 102], the courts held an attorney with a contractual charging lien who obtains a personal injury recovery for his client is entitled to priority over the subsequent attachment lien of a judgment creditor even though the underlying claim of the judgment creditor was for unpaid child support. (*Cappa, supra,* at p. 175; *Wujcik, supra,* at pp. 1793-1794.) In each case, however, the "fund" to which the attorney's lien attached was a standard money judgment rather than a fund representing court-ordered child support payments.

support. (See, e.g., *Fuqua* v. *Fuqua* (1977) 88 Wn.2d 100 [558 P.2d 801, 804] [stating "majority" view is that charging lien against child support is invalid].)

Most courts which have adopted the majority rule have done so on the public policy grounds that an award of child support is to enable the child adequately to be supported and that it would frustrate the purpose of the award if an attorney could assert a lien to obtain portions of the amount needed for that support.[5] (See *Fuqua* v. *Fuqua, supra,* 558 P.2d at pp. 805-806.) The *Fuqua* court explained: "[T]o allow an attorney's lien to be asserted against child support would necessarily result in counsel for the custodian taking from the children involved, monies which the court has determined to be necessary to assure their adequate support. It is impractical to assume that the trial court can consider possible liability for attorney's fees in ascertaining a support figure. This is precisely the sort of consideration which led to our holding in [*In re Smith* (1953) 42 Wn.2d 188 (254 P.2d 464)]. If the assertion of liens such as these became commonplace, the court's function in providing for the adequate support of minor children, the innocent parties to these actions, would be wholly frustrated. 'Equity, which creates the fund, will not suffer its purpose to be nullified.' [*Turner* v. *Woolworth* (1917) 221 N.Y. 425, 430, 117 N.E. 814, 816.] We therefore hold that, as a matter of public policy, [attorney's charging liens] may not be asserted against monies which represent payments for child support. Any effort to assert such a lien is void, whether it be against funds in the hands of the clerk, the lawful custodian of the children, or an attorney." (*Fuqua, supra,* at p. 805.)

Attempts by attorneys to enforce charging liens against support awards have been rejected for similar reasons by the courts in Florida (see *Dyer* v. *Dyer* (Fla.Dist.Ct.App. 1983) 438 So.2d 954, 955 [no lien on alimony]); Ohio (see *Minor Child of Zentack* v. *Strong* (1992) 83 Ohio App.3d 332 [614 N.E.2d 1106, 1109] [no lien on child support]); Missouri (see *Hilleary* v. *Hilleary* (1915) 189 Mo.App. 704 [175 S.W. 282] [no lien on alimony] and *Sanner* v. *Sanner* (Mo. 1932) 46 S.W.2d 936, 937-938 [no lien on alimony or child support]); New York (see *In re Bolles* (1903) 78 A.D. 180 [79 N.Y.S. 530] [no lien on alimony], *Dougherty* v. *Burger* (1929) 133 Misc. 807 [234

---

[5]The courts in two states which have adopted the majority rule have done so using a rationale different from the *Fuqua* court's rationale. In *Sue Davidson, P.C.* v. *Naranjo* (Wyo. 1995) 904 P.2d 354, 356-358 and in *Law Office of Tony Center* v. *Baker* (1988) 185 Ga.App. 809 [366 S.E.2d 167, 169], the courts held an attorney's charging lien does not attach to child support payments because those payments are received and held by the custodial parent as a "trustee" for the child, and as a trustee the parent lacks sufficient ownership in the child support payments to grant a lien against the payments.

N.Y.S. 274] [same], and *Mooney* v. *Mooney* (1899) 29 Misc. 707 [62 N.Y.S. 769] [same]); and Michigan (see *Jordan* v. *Westerman* (1886) 62 Mich. 170, 178-180 [28 N.W. 826, 829-830] [no lien on alimony]).

Although an attorney's charging lien may attach and have priority to judgments for ordinary debts (*Cetenko* v. *United California Bank, supra*, 30 Cal.3d at pp. 534-536), the courts in California have consistently recognized that a child support award is not an ordinary debt but is instead a court-ordered obligation designed to protect the welfare of the child. (*In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 451 [235 Cal.Rptr. 458].) Because of the strong public policy that favors protecting the child's welfare against infringement of the right to receive support, the California courts have held that an agreement between parents purporting to modify the child's right to support is not binding on the court or the child. (*In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 856 [146 Cal.Rptr. 26]; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941].) An agreement purporting to grant an attorney's lien against a child support award would have an analogous impact because it would necessarily diminish the fund the court has declared necessary for the child's welfare and frustrate the goals of the court's order. Because a contract between parents diminishing court-ordered child support is not binding on the child or the court (*ibid.*), we conclude a parent's contract with an attorney should likewise be disregarded to the extent it would diminish the fund the court has deemed necessary for the child's welfare.

We have found only a few states which have permitted charging liens to attach to child support awards. However, the courts that have adopted this minority view have done so without addressing the public policy concerns which convince us to refuse enforcement of the lien to preserve the integrity of court-ordered child support from diminution.[6] Accordingly, those decisions lack persuasive force.

---

[6]The rationale of three of the states adopting the minority view was based principally on a rejection of the "trustee" theory (see fn. 5, *ante*), reasoning either that the mother was not a "trustee" and therefore could grant liens on the fund (see *Costigan* v. *Stewart* (1907) 76 Kan. 353 [91 P. 83]) or that the mother had a sufficient separate beneficial interest in the recovery to permit her to grant a lien against the payments (see *State* v. *O'Brien* (1921) 89 W.Va. 634 [109 S.E. 830, 832]; *Taylor* v. *Stull* (1907) 79 Neb. 295 [112 N.W. 577, 578]). Because we rest our holding on public policy grounds rather than on the "trustee" theory, these three cases are not relevant to our analysis. (Accord, *Fuqua* v. *Fuqua, supra*, 558 P.2d at p. 805 [trust cases have no relevance because lien invalid on public policy grounds].) In the only other decision adopting the minority view, the court in *Hampton* v. *Hampton* (1935) 85 Utah 338 [39 P.2d 703] simply held a Utah statute authorizing attorney's liens did not provide any exceptions for the types of recoveries against which a lien could attach. (*Id.* at p. 706.) The *Hampton* case has no application here because California has no similar statute.

Attorneys argue that even if public policy concerns preclude enforcement of a charging lien as to child support obligations paid in a timely fashion, those policy concerns evaporate when the charging lien is against a fund comprising arrearages for past due child support. Attorneys reason that when monthly support payments are not made the custodial parent must advance sums to support the child and a later judgment for arrearages is no longer for "support" but instead is to reimburse the custodial parent for the advances. The *Fuqua* court rejected the same argument, reasoning: "[Attorney] has asserted that his liens are valid at least to the extent that they involve back support—with this contention we cannot agree. We see no reason to allow assertion of a lien against support monies which are, after long delay, made available to children who have been deprived of the benefit of adequate support on a regular basis. The fact that such children may have managed to get along, though deprived of adequate support for some time, certainly does not compel the conclusion that those support monies are in any way less important to the welfare of the children involved than they were at the time awarded. Indeed, it is quite likely that the back support would be needed to satisfy indebtedness incurred by the custodian on behalf of the family during the period in which the family was without adequate support." (*Fuqua* v. *Fuqua, supra*, 558 P.2d at pp. 805-806.)

We agree with *Fuqua*'s reasoning. The failure of a noncustodial spouse promptly to pay child support impoverishes the child by forcing the custodial spouse to defer some expenses, to borrow to pay those expenses which cannot be deferred, or to deplete savings earmarked for future security. Arrearages, when finally collected, do not somehow lose their character as being necessary to support the child's welfare. On the contrary, access to these arrearages may be as critical to the child's welfare as are access to current payments, because arrearages may be the only source available for the family to replenish their depleted resources.[7]

We conclude that public policy precludes an attorney's charging lien from being enforced against court-ordered child support payments. Accordingly, the trial court correctly denied Attorneys' motion.

---

[7]We recognize that the rule we adopt may make it more difficult for a custodial spouse to retain legal counsel to collect child support arrearages when a third party lien is asserted against those arrearages. However, we are of the opinion that preservation of the child support for the benefit of the child outweighs the lien right interests of attorneys even if some attorneys may as a result be reluctant to extend their services in child support collection matters.

## DISPOSITION

The petition is denied. The parties shall bear their own costs on appeal.

Kremer, P. J., and Nares, J., concurred.