Filed 2/6/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of DANIELLE and LEWIS ALLEN. | 2d Civ. No. B338855 (Super. Ct. No. DR25774) (San Luis Obispo County) |
| DANIELLE BROWN, Respondent, v. LEWIS ALLEN, Appellant. | |

In *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203 (*Sabine & Toshio*), our colleagues in Division One held that parents are precluded from contractually waiving child support arrearages. (*Id*. at p. 1213.) In *Sabine & Toshio*, the child in question was a minor; no case since has extended this prohibition to children who are now the age of majority. Here, we hold that parents are precluded from contractually waiving or forgiving past due child support arrearages even after the child has reached the age of majority and there is no longer a current support order in place.

Lewis Allen appeals from an order denying his request to enforce an alleged agreement with his ex-wife, Danielle Brown née Allen, to satisfy Lewis's[1] unpaid support arrearages in the parties' marital dissolution action. We affirm.

FACTS AND PROCEDURAL HISTORY

Lewis and Danielle were married in 1982 and had four children. In 1996, Danielle filed for divorce. At the time, the Allen children were ages 5, 9, 10, and 12 years old. The 1998 judgment required Lewis to pay $3,200 per month in family support. In 2002, Danielle remarried. The court suspended the family support order, and ordered Lewis to pay $2,500 per month in child support and $1,000 per month toward his arrearages. Later that year, Lewis's child support was reduced to $1,932 per month. The youngest Allen child turned 18 in 2008.

Lewis made some payments, but failed to fully comply with the trial court's orders. He was declared a contemptuous litigant because he "made no reasonable efforts to support his children." Lewis "terminated his job in September 2000 and moved to Utah to avoid payment of support." In 2002, a bench warrant was issued for Lewis's arrest. Lewis later moved out of the United States. He made infrequent payments thereafter.

Almost two decades later, in September 2020, Lewis emailed Danielle to discuss resolving the support arrearages. Throughout their discussions, Danielle consistently maintained that Lewis's total unpaid accrued support, including interest, was approximately $545,000. Danielle said she would accept nothing less than $272,500—or half of $545,000—from Lewis to resolve the arrearages.

---

[1] Due to the shared Allen surname, we use first names for ease of reference. No disrespect is intended.

Lewis and Danielle communicated via email over the next month, with Lewis making various offers and Danielle remaining firm with her $272,500 demand. In November 2020, Lewis agreed to pay Danielle $272,500, split into several payments. Lewis's last payment of $85,000 was "due" May 31, 2021. This final payment did not reach Danielle's bank account until June 1, 2021.

Beginning in March 2021 and continuing after his final payment, Lewis requested that Danielle sign a stipulated accord and satisfaction prepared by his attorney. The proposed accord and satisfaction stated that Danielle waived all rights and claims to any of the remaining accrued support arrearages (child, family, or spousal) by accepting Lewis's payments. Danielle declined to sign the stipulation.

In May 2023, Lewis filed a request for order (RFO), requesting the trial court find a "valid written accord and satisfaction as to a child support and family support arrearage that is enforceable."

The trial court denied Lewis's RFO, finding the parties were unable to agree on the stipulation and there was no binding agreement to resolve the arrearages. The trial court also ruled that any accord and satisfaction was unenforceable because there was no "bona fide" dispute concerning the amount of Lewis's arrearages.

DISCUSSION[2]

*Accord and satisfaction of child support arrears*

Lewis contends there was no substantial evidence to support the trial court's finding that his agreement with Danielle is unenforceable. We are not persuaded.

---

[2] Danielle moved to dismiss the appeal based on the disentitlement doctrine. (*Ironridge Global IV, Ltd. v.*

3

In keeping with California's long-standing policy that the welfare of children is of utmost importance, the obligation to pay child support runs to the child, not the parent. (*In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 451; *In re Marriage of Comer* (1996) 14 Cal.4th 504, 517 (*Comer*).) "In essence, the parent, to whom such support is paid, is but a mere conduit for the disbursement of that support." (*Williams v. Williams* (1970) 8 Cal.App.3d 636, 640.) Thus, an agreement between parents purporting to modify a child's right to support is not binding on either the court or the child. (*Hoover-Reynolds v. Superior Court* (1996) 50 Cal.App.4th 1273, 1279.)

Family Code[3] section 3651, subdivision (c)(1), prohibits the reduction of child support arrearages. It states in relevant part: " '[A] support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate.' This statute 'applies whether or not the support order is based upon an agreement between the parties.' (§ 3651, subd. (e).) 'Accrued' means 'past due.' [Citation.]" (*Sabine & Toshio*, *supra*, 153 Cal.App.4th at p. 1212.)

Thus, Lewis and Danielle could not, in 2021, agree to forgive Lewis's past due arrearages that accrued in 2008, when the youngest Allen child reached majority. But Lewis contends his purported agreement with Danielle is enforceable as an accord and satisfaction. "An accord and satisfaction is the substitution of a new agreement for and in satisfaction of a preexisting agreement

---

*ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.) Because we resolve this appeal on the merits, we deny the motion.

[3] Undesignated statutory references are to the Family Code.

between the same parties.  The usual purpose is to settle a claim at a lesser amount."  (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1058.)

To establish an accord and satisfaction, Lewis must show (1) a " 'bona fide dispute' " with Danielle, (2) he made it clear that acceptance would fully satisfy her claim, and (3) Danielle understood that acceptance would constitute payment in full. (*Thompson v. Williams* (1989) 211 Cal.App.3d 566, 571.)  Without an accord and satisfaction, there can be no enforceable agreement because a "legal obligation to perform an act may not constitute consideration for a contract."  (*O'Byrne v. Santa Monica–UCLA Medical Center* (2001) 94 Cal.App.4th 797, 808.)

Lewis contends there is a "bona fide" dispute over the amount of his arrearages and that section 3651, subdivision (c)(1) does not preclude the parties from settling *disputes* regarding the amount of arrearages.  He also contends that Danielle may agree to accept a lesser sum in full satisfaction of the amount in controversy.  (*Sabine & Toshio*, *supra*, 153 Cal.App.4th at pp. 1214–1215.)

" 'The question whether an agreement amounts to an accord and satisfaction is one of the intention of the parties and is therefore a question of fact.' [Citation.]"  (*BII Finance Co. v. U-States Forwarding Services Corp.* (2002) 95 Cal.App.4th 111, 126.)  We review this for substantial evidence.  (*Id*. at p. 118.)  And Lewis, as the party contending the existence of an accord and satisfaction, bears the burden of proof.  (*Rabinowitz v. Kandel* (1969) 1 Cal.App.3d 961, 965.)

*Sabine & Toshio* is instructive.  There, the husband, Toshio, failed to pay child support.  (*Sabine & Toshio*, *supra*, 153 Cal.App.4th at p. 1206.)  The wife Sabine sought help from a Japanese collection agency because Toshio had moved to Japan.

5

(*Id*. at p. 1207.)  The parties entered into various agreements whereby Toshio would pay less than the full arrearages amount, totaling over $365,000.  (*Id*. at pp. 1207–1210, 1212.)  The Department of Child Support Services filed a motion requesting the trial court determine whether the parties' agreement was enforceable.  (*Id*. at p. 1211.)  The trial court declined to enforce the agreement, finding it "too vague, ambiguous, and unclear to constitute a release of arrearages."  (*Ibid*.)

The Court of Appeal in *Sabine & Toshio* affirmed, concluding there was no bona fide dispute permitting a reduction in the arrearages.  It reasoned: "Toshio did not deny the existence of the arrearages, question the meaning of the Judgment, or raise any issue concerning the amount he owed.  Nor did he contend that the Judgment was invalid or void as a result of extrinsic fraud, lack of service of process, or any other reason.  Quite simply, Toshio offered Sabine less than one-third of the arrearages in exchange for a release as to the rest.  We fail to see how this resolved a bona fide dispute."  (*Sabine & Toshio*, *supra*, 153 Cal.App.4th at p. 1215.)

Similarly here, the trial court correctly found there was no accord and satisfaction because there was no "bona fide" dispute as to the overall arrearages.  Substantial evidence supports this finding.  Danielle was resolute in her assessment that Lewis's overall arrearages totaled approximately $545,000.  Danielle based this figure on her discussions with Child Support Services and San Luis Obispo County Legal Aid.  Nor was there evidence that Lewis owed a different amount.  Lewis provided a spreadsheet to Danielle with his own calculations, but that spreadsheet is not part of the record on appeal.

Lewis conceded that his "max payment" of approximately $220,000 did not include penalties and interest.  But unpaid child

6

support amounts accrue interest.  (*In re Marriage of Hubner* (2004) 124 Cal.App.4th 1082, 1089 [interest].)  Lewis also conceded that according to the County of San Luis Obispo, he owed more than $500,000.  These facts do not evidence a "bona fide" dispute concerning the arrearages amount.

Nor does the draft stipulation that Lewis's attorney prepared evidence a "bona fide" dispute over the arrearages.  While the stipulation stated that the parties "dispute[d]" the "specific amounts" of arrearages, the stipulation did not specify the amount in dispute.  Danielle's attorney requested the stipulation be revised to include Lewis's "estimate of the amount due within $10,000 (up or down)."  While Lewis purportedly sent a revised stipulation to Danielle, he mistakenly sent the *original* stipulation, with no changes and no specification as to the disputed amounts.  After his final payment, Lewis's attorney provided Danielle's attorney with a revised stipulation, which again did not include Lewis's assessment of the arrearages owed.  Instead, the stipulation states "there is due an outstanding child support arrearage, a spousal support arrearage or family support arrearage, in the sum of $200,000.00, *plus penalties and interest*."  (Italics added.)  Again, these facts do not evidence a "bona fide" dispute.

Lewis contends he had a good faith belief that he owed "something less than $220,000," exclusive of interest charges, and that his belief supports the existence of a "bona fide" dispute.  We reject this contention.  Lewis told Danielle, "I understand penalties and interest and neglect on my part to pay on time of which I did not.  I'm sorry."  He cannot claim a "bona fide" dispute by ignoring that interest accrues on the principal amount of unpaid support.  (*In re Marriage of Hubner*, *supra*, 124 Cal.App.4th at p. 1089.)

Substantial evidence supports the trial court's finding that there was no "bona fide dispute" regarding the arrearages Lewis owed.

### No enforceable agreement

But even if there was a "bona fide" dispute regarding Lewis's arrearages, substantial evidence supports the trial court's finding the parties failed to reach a final, enforceable agreement regarding the amount of arrearages owed.

Lewis stated in multiple emails that he would have the agreement finalized in a formal written document. While the parties reached a preliminary agreement in November 2020, they did not reach a final agreement. Lewis did not provide the initial draft stipulation to Danielle until March 2021. Danielle through her attorney later requested revisions to this agreement. But Lewis sent the *original* stipulation, with none of Danielle's requested changes. Lewis conceded his error in sending the same stipulation. After Lewis's final payment, his attorney provided a revised stipulation, but it contained new errors, including reducing the amount due to Danielle from $272,500 to $252,000. Thus, Danielle declined to sign the agreement. Substantial evidence supports the finding there was no final agreement.

### Waiver and estoppel

Alternatively, Lewis contends Danielle waived her right to and/or is equitably estopped from recovering arrearages in excess of $272,500. Again, we are not persuaded.

"[W]aiver is the ' "intentional relinquishment or abandonment of a known right." ' " (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) Although " 'a person has the ability to prospectively waive court-ordered support' " (*Sabine & Toshio*, *supra*, 153 Cal.App.4th at p. 1217), that is not the situation here. Danielle no longer is

8

entitled to support and instead seeks to recover arrearages. Nor does *In re Marriage of Damico* (1994) 7 Cal.4th 673 (*Damico*) assist Lewis. That case involved a custodial parent's concealment of a child. (*Id*. at pp. 676–677.) In any event, Danielle's behavior was inconsistent with waiver. She repeatedly advised Lewis of the outstanding amount owed, and that absent a final, enforceable agreement, she would seek to collect the full amount of arrearages.

Lewis fares no better with estoppel. "Estoppel requires: (1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his conduct would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his injury. Where one of the elements is missing, there can be no estoppel." (*In re Marriage of Thompson*, *supra*, 41 Cal.App.4th at p. 1061.)

Here, there is no evidence that Lewis suffered any harm by paying an amount that was "undisputably ow[ed]." (*In re Marriage of Thompson*, *supra*, 41 Cal.App.4th at p. 1061.) "[T]here is no inequity in assessing avoidable interest sums against a father whose delayed payments likely caused hardship or inconvenience to the mother." (*Id*. at pp. 1061–1062.)

Lewis suggests there are divergent public policy considerations for support arrearages for orders where the children are minors, versus arrearages for support orders that are no longer active because the children have reached the age of majority. (*Damico*, *supra*, 7 Cal.4th at p. 685; *Comer*, *supra*, 14 Cal.4th at pp. 530–531 (conc. opn. of Mosk, J.).) In *Damico*, our Supreme Court held that "a custodial parent who actively conceals him or herself and the child from the noncustodial parent until the child reaches the age of majority, despite reasonably diligent efforts by the

9

noncustodial parent to locate them, is estopped from later collecting child support arrearages for the time of the concealment." (*Damico*, at p. 685.) No such scenario is present here.

Here, nothing in the record suggests Danielle concealed the Allen children from Lewis. Instead, Danielle struggled due to Lewis's failure to pay the ordered support: she lost the family residence in a short sale, relied on food banks and church assistance, and sought court intervention when Lewis stopped making his payments. Thus, while the distinction Lewis raises is relevant for purposes of raising estoppel, the record here does not support such a defense. And given the rationale for precluding parents from contractually waiving child support arrearages, prohibiting parents from doing so only for active orders would reward a noncustodial parent who is able to thwart their child support obligations until the child reaches majority.

We decline to reverse the trial court's ruling on grounds of waiver or equitable estoppel.

DISPOSITION

The order is affirmed. Danielle shall recover her costs on appeal.

CERTIFIED FOR PUBLICATION.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.          CODY, J.

10

Erin M. Childs, Judge

Superior Court County of San Luis Obispo

_____

Tardiff Law Offices and Neil Tardiff for Appellant.

Complex Appellate Litigation Group, Claudia Ribet, Robert A. Roth; Casacca Law and Ernest Alfred Casacca for Respondent.