[Civ. No. 33772. Second Dist., Div. Two. Nov. 20, 1969.]

WILLIAM RABINOWITZ et al., Plaintiffs and Appellants, v. MAURICE KANDEL et al., Defendants and Respondents.

## COUNSEL

Alvin Wechsler for Plaintiffs and Appellants.

Richard S. Weiner for Defendants and Respondents.

## OPINION

**FLEMING, J.**—In their third cause of action plaintiffs Rabinowitz and Bernstein, doing business as The Wilshire Company, sought to recover from defendants Maurice Kandel and wife the balance of $9,165.12 due on a $10,000 promissory note dated 1 November 1962.

As an affirmative defense to this third cause of action the Kandels pleaded that on 6 November 1962 plaintiffs orally agreed to accept an assignment of proceeds due the Kandels from a certain escrow in full and complete satisfaction of the $10,000 note, and that such an assignment had been made by defendants and accepted by plaintiffs.

The proof showed that on 1 November 1962 plaintiffs borrowed $10,000 from their bank and lent it to the Kandels on an unsecured 30-day note. On 6 November the Kandels in writing assigned to plaintiffs from a particular real estate escrow the sum of $10,000 which they said would become payable to them on the closing of the escrow.

On 10 December the Kandels, learning that $10,000 cash would not be forthcoming from the escrow, cancelled the $10,000 assignment to plaintiffs and gave the escrow holder instructions that not to exceed $1,000 from the escrow, "together with $4,200 third trust deed and note in its present condition (UNASSIGNED TO THE WILSHIRE COMPANY), together with any other papers due seller [the Kandels] at close of escrow are to be forwarded to The Wilshire Company . . ."

Thereafter, two notes payable to Maurice Kandel and purportedly secured by deeds of trust were forwarded by the escrow holder to plaintiffs. One was a $4,200 note of Elizabeth Farrington, the other a $4,600 note of Betty Escollies. Kandel did not make any written assignment of either note to plaintiffs, not did he make any assignment of the deeds of trust to which the notes referred.

On 23 January 1963 plaintiff Rabinowitz wrote Maurice Kandel:

"I have been trying and trying to get to talk to you but you never call me back. If you recall, the $10,000.00 is long overdue on the note and the bank has been insisting upon payment.

"As to the Elizabeth Farrington type of person, it is very, very difficult to get anywhere with them. I have spent a great deal of time with them but without any results. Therefore, we would like to have you straighten up with us at once since the payment to the bank is long overdue; however, Alex and I, in view of the fact that we have spent so much time in this matter and are acquainted with all of the facts, are willing to represent you in trying to collect money from them, if possible. It may be necessary to foreclose on them. With this type of people, it is not advisable to leave a long period of time expire—but you must show action. I told her, in no uncertain manner, that unless they come up with money, that we will start foreclosure action.

"I trust that you will bring me in a check for $10,000.00, since I did act in good faith in making the money available for you immediately by borrowing it from the bank expressly for you and now that the bank is asking for it, I hope you will not disappoint me."

Rabinowitz testified the two promissory notes had been forwarded to him as collateral security for the unsecured loan of $10,000. He also testified he had never received any assignment of these promissory notes from Kandel. Defendant Kandel agreed that he had never assigned the promissory notes to plaintiffs. But he maintained that these unassigned notes had been accepted by plaintiffs as full payment for the Kandels' $10,000 note.

On this evidence the trial court found that the Kandels' affirmative defense—that plaintiffs on 6 November had accepted an assignment of the proceeds of an escrow as full and complete satisfaction of the $10,000 note—was "substantially true,"

in that the parties had "reached an accord with respect to defendants' indebtedness,"

in that "defendants . . . delivered to plaintiffs all . . . things of value due defendants from the escrow,"

and in that plaintiffs "by retaining the proceeds of [the] escrow . . . agreed that such proceeds consisting of notes and a trust deed were payment in full . . . of defendants' obligations" [under the note].

In accordance with this finding the court entered judgment for defendants on plaintiffs' third cause of action.

Plaintiffs contend on appeal that the evidence was insufficient to support this finding. Defendants contend the finding was proper (1) because the 6 November assignment amounted to an accord and satisfaction, and (2) because plaintiffs' retention of the proceeds of the escrow amounted to an agreement to accept such proceeds as full payment of the debt under the note.

1. "An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." (Civ. Code, § 1521.) "Though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is fully executed." (Civ. Code, § 1522.) "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction." (Civ. Code, § 1523.) ■ Since an "[a]ccord signifies an agreement between the parties . . . the primary principles which govern the law of contracts are necessarily applicable [in determining] . . . whether or not there was an accord and satisfaction." (*Whepley Oil Co.* v. *Associated Oil Co.,* 6 Cal.App.2d 94 at p. 112 [44 P.2d 670].) ■ The burden of establishing the accord and satisfaction lies with the party asserting it. (*Metro* v. *Dickerson,* 131 Cal.App.2d 106 [280 P.2d 25].)

■ We think defendants failed to sustain their burden of proof that the assignment of 6 November amounted to an accord and satisfaction, for even assuming the making of an accord on 6 November it clearly appears that such an accord was never executed.

The only evidence that plaintiffs agreed to accept the 6 November assignment of $10,000 as full payment for their $10,000 note came from Kandel's testimony. If we accept that testimony and assume the parties entered a binding accord on 6 November, what was the nature of that accord? In essence, it was an agreement by the creditors to accept $10,000 in cash which was expected to become payable to the Kandels from a particular escrow. But both parties agree that this particular agreement was never carried out because the anticipated $10,000 never materialized in the escrow. Clearly, if the parties had arrived at an accord on 6 November, that accord was never executed and therefore never metamorphosed into satisfaction. The documentary evidence in the case destroys defendants' claim of an accord and satisfaction arising out of the 6 November assignment of $10,000, for it shows that the Kandels themselves cancelled that assignment on 10 December. The Kandels' new instruction to the escrow holder on 10 December did not assign anything to plaintiffs but merely specified that the proceeds of the escrow up to $1,000, together with a note in its then condition (UNASSIGNED), together with other papers due the Kandels, were "to be forwarded" to plaintiffs at the close of escrow. Since under the asserted accord of 6 November the agreed consideration (the anticipated $10,000) was never received by the creditors, that accord was never executed. Thus the evidence fails to support the finding of the trial court which declared "substantially true" the defense that an assignment on 6 November 1962 of defendants' interest in an escrow had been accepted by plaintiffs in full satisfaction of the debt.

It is apparent that defendants' principal contention must be that the

parties made a second accord on 10 December under which plaintiffs orally agreed to extinguish the $10,000 obligation due them on defendants' promissory note in return for $1,000 from the escrow and an assignment of third trust deed notes payable to Kandel.

But no finding of a second accord was ever made by the court. Furthermore, assuming the negotiation of such an accord the record contains no evidence of its execution. Kandel denied he ever agreed to assign these notes to plaintiffs. His escrow instruction of 10 December—unlike that of 6 November—avoided any reference to assignment and merely directed that the third trust deed note and other papers be "forwarded" to plaintiffs. In point of fact these trust deed notes were never assigned by Kandel to plaintiffs. Significantly, the $10,000 promissory note of the Kandels was never surrendered. Also significantly, on 23 January Rabinowitz wrote Kandel a dunning letter demanding payment of the note. Hence this purported accord of 10 December—if made—likewise remained unexecuted. Accordingly, we have no occasion to consider whether it strains credulity to the breaking point to believe that anyone not certifiably insane would agree to accept delivery of third trust deed notes, one of which was delinquent, in the face amount of $8,800 as payment in full for a cash loan made a month earlier in a greater amount. (*Estate of Bristol,* 23 Cal.2d 221 [143 P.2d 689]; *Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54].) Nor are we required to determine whether an agreement to assign notes in face amounts of $8,800 qualifies as sufficient consideration to support an oral accord to satisfy a liquidated debt in a greater amount. (Civ. Code, § 1524; 1 Cal.Jur.2d, Accord and Satisfaction, §§ 19, 20; *Potter* v. *Pacific Coast Lbr. Co.,* 37 Cal.2d 592, 597 [234 P.2d 16]; *Kelly* v. *David D. Bohannon Organization,* 119 Cal.App.2d 787, 792 [260 P.2d 646]; *Hurley* v. *Kazantzis,* 82 Cal.App.2d 378, 381 [186 P.2d 434]; *Petroleum Collections Inc.* v. *Sulser,* 265 Cal.App.2d 976 [70 Cal.Rptr. 537].)

2. The second proposition offered in support of the finding is that plaintiffs, in receiving and retaining the proceeds of the escrow, thereby agreed to accept them as full payment for their $10,000 note. We think the logic of this reasoning is defective. True enough, the escrow notes were delivered to plaintiffs, and true enough plaintiffs retained them. But to argue from this that plaintiffs agreed to accept them as full payment of the note is a venture in bootstrap levitation. ■ The fact that a creditor gets and keeps collateral security for an indebtness is no proof whatever that he has agreed to accept the security as full payment of the debt. ■ "The delivery of property by the maker to the payee of a promissory note, with instructions to sell the property and apply the proceeds in payment of the note, is neither payment nor satisfaction." (1 Cal.Jur.2d, Accord and Satisfaction, § 9.)

We conclude there was no credible evidence in the record to support the finding of an accord on 6 November to accept an assignment of escrow proceeds as full satisfaction of the debt, to support the finding that such an accord had been carried out by way of satisfaction, or to support the finding that the parties had agreed that retention of the escrow notes and the trust deed forwarded to plaintiffs would constitute full discharge of defendants' $10,000 note.

The judgment on the third cause of action is reversed; in all other respects the judgment is affirmed. Plaintiffs to recover costs on appeal.

Roth, P. J., and Herndon, J., concurred.