828 430 Mass. 828 (2000)

National Union Fire Insurance Company of Pittsburgh, Pennsylvania *v.* Allite, Inc.

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA *VS.* ALLITE, INC.

Norfolk. December 6, 1999. - February 29, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Statute,* Construction, Federal preemption. *Federal Preemption. Uniform Commercial Code,* Indemnity, Bill of lading. *Carrier,* Damages. *Damages,* Carrier.

Discussion of the relationship of Federal law to Article 7 of the Uniform Commercial Code, G. L. c. 106, §§ 7-101 to 7-603. [830-833]

An insurer's claim for indemnity brought under G. L. c. 106, § 7-301 (5), arising from injuries sustained in the unloading of freight from a truck, was preempted by the Federal Bills of Lading Act of 1916 (FBLA), 49 U.S.C. §§ 80101-80116 (1994), where the shipment in question was an interstate transaction [833-835]; moreover, the indemnity relating to bills of lading created by § 7-301 (5) did not, in any event, extend to tort claims for personal injuries [835-837].

CIVIL ACTION commenced in the Superior Court Department on October 15, 1996.

The case was heard by *Gordon L. Doerfer,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Myles W. McDonough* for the plaintiff.

*Stephen M.A. Woodworth* for the defendant.

SPINA, J. The National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), appeals from a judgment of the Superior Court in its action for indemnity against Allite, Inc. (Allite), pursuant to § 7-301 (5) of the Uniform Commercial Code. See G. L. c. 106, § 7-301 (5); N.Y. U.C.C. Law § 7-301(5) (McKinney 1993). National Union sought indemnity for its payment of a personal injury judgment in a case arising out of the carriage of Allite goods by a carrier insured by National Union. Holding that Federal law forbids the application of § 7-301 (5) to interstate transactions, the judge

denied summary judgment to National Union and granted summary judgment to Allite. Having granted National Union's application for direct appellate review, we affirm the judgment of the Superior Court. We hold not only that § 7-301 is preempted by Federal law, but that the indemnity afforded by § 7-301 does not extend to tort claims for personal injuries.

1. *Facts and prior proceedings.* The following facts are undisputed. In 1991, Allite and New England Motor Freight, Inc. (NEMF), agreed that NEMF would transport some light fixtures from Allite's facility in New York to a company in Waltham where Edward Rando was employed. NEMF was insured by National Union. A bill of lading and a packaging slip contained an estimate that the shipment weighed one hundred pounds. The estimate was wrong; the fixtures weighed more than 300 pounds. After being transported to Allite's facility in Billerica, the shipment was directed to Waltham, where Rando and a coworker undertook to unload them. The only loading bay at the Waltham facility was occupied. Relying on the one hundred pound estimate, the two men decided to unload the fixtures at a place some distance from the loading bay and to move them from there into the facility. Rando injured his back trying to move the fixtures.

Rando and his wife, Ramona, sued Allite and NEMF for negligence, loss of consortium, and violating G. L. c. 93A, and prevailed on the first two claims in September, 1994, after a jury trial. The jury apportioned negligence as follows: 60% to Allite, 37% to NEMF, and 3% to Rando. Judgment, inclusive of interest and costs, entered in the approximate amount of $1.34 million. Allite and NEMF appealed. While the appeal was pending, Allite's insurer settled with the Randos. Some time afterward, NEMF stipulated that its rights to contribution from Allite had been satisfied, but made no such stipulation as to NEMF's indemnity rights. National Union later paid the Randos the balance that NEMF owed them on the judgment.

National Union gave notice to Allite of its claim for indemnity pursuant to G. L. c. 106, § 7-301 (5), then brought an action against Allite on the claim. Both parties moved for summary judgment, and a Superior Court judge ruled in favor of Allite. Because the New York and Massachusetts versions of § 7-301 (5) are identical, the judge held that it makes no difference which version applies. The judge determined that Federal law

preempts the application of Article 7 to interstate shipments.[1] Citing the Federal (or Pomerene) Bills of Lading Act of 1916 (FBLA), 49 U.S.C. §§ 80101-80116 (1994), the judge said that Article 7 applies only to bills of lading for intrastate traffic and traffic between a foreign country and a State. The judge also said that the Carmack Amendment to the Interstate Commerce Act, formerly 49 U.S.C. § 11707 (1994), now codified in, inter alia, 49 U.S.C. § 14706 (1996), preempts National Union's claim against Allite.

On appeal, National Union argues that § 7-301 (5) provides indemnity for its payment of the Rando judgment on behalf of NEMF and that § 7-301 (5) is not preempted by Federal law. National Union does not rely on any common-law or contractual right to indemnity; its claim is based solely on § 7-301 (5), which states that a shipper of goods "shall be deemed to have guaranteed to the issuer the accuracy at the time of shipment of the description, marks, labels, number, kind, quantity, condition and weight, as furnished by him," and that the shipper "shall indemnify the issuer against damage caused by inaccuracies in such particulars."[2]

2. *The relationship of Federal law to Article 7 of the Uniform Commercial Code, G. L. c. 106, §§ 7-101 to 7-603.* Article 7 governs the duties and liabilities created by warehouse receipts, bills of lading, and other documents of title.[3] Bills of lading are documents that evidence the receipt of goods for shipment. Such bills are customarily issued by persons who are engaged in the business of transporting or forwarding goods. See G. L. c. 106, § 1-201 (6).

---

[1]The judge determined that the Allite shipment was an interstate shipment despite the stop in Billerica. The bill of lading identified the Waltham facility as the destination of the goods. See *Bracht* v. *San Antonio & A.P. Ry.*, 254 U.S. 489, 491 (1921) ("carriage between points in the same [S]tate . . . really but part of an interstate or foreign movement reasonably to be anticipated by the contracting parties"); *Schultz* v. *Auld*, 848 F. Supp. 1497 (D. Idaho 1993). National Union does not contest the judge's determination that the shipment was an interstate shipment.

[2]Section 7-102 (1) (*g*) of the Uniform Commercial Code defines an issuer as a bailee who issues a document of title such as a bill of lading. Section 7-102 (1) (*a*) defines a bailee as a person who by a document of title acknowledges his possession of goods and contracts to deliver them.

[3]Our discussion adverts primarily to the Massachusetts version of Article 7 as it relates to bills of lading. The New York and Massachusetts versions of § 7-301 are identical. The parties do not argue that it makes a difference to the outcome of the case whether New York or Massachusetts law applies.

It is indisputable that Federal law invalidates the application of Article 7 to a wide range of transactions. The Carmack Amendment "supersede[s] diverse [S]tate laws with a nationally uniform policy governing interstate carriers' liability for property loss." *New York, N.H. & H.R.R.* v. *Nothnagle*, 346 U.S. 128, 131 (1953), citing *Adams Express Co.* v. *Croninger*, 226 U.S. 491, 504-505 (1913); *Kansas City S. Ry.* v. *Carl*, 227 U.S. 639, 648-649 (1913). "Codifying the common law liability of carriers for loss or damage to property in interstate shipments and export shipments to adjacent foreign countries, the Amendment thus restricts Article 7 to the limited domain of intrastate transportation." R.A. Riegert & R. Braucher, Documents of Title 12 (3d ed. 1978). The FBLA bears an even closer relationship to the subject matter of Article 7. Indeed, the FBLA is "largely a verbatim copy" of a uniform State enactment that Article 7 was intended to replace: the Uniform Bills of Lading Act (UBLA), previously codified in Massachusetts as G. L. c. 108 (repealed in its entirety, except for §§ 42-48, by St. 1957, c. 765, § 2, effective October 1, 1958). R. Braucher & R.A. Riegert, Introduction to Commercial Transactions 335 (1977). Taken together, these two Federal statutes *"greatly diminish the significance of Article 7's provisions on bills of lading"* (emphasis in original). 3 J.J. White & R.S. Summers, Uniform Commercial Code § 29-2, at 324 (4th ed. 1995).[4]

The FBLA applies to the carriage of goods within the District of Columbia and United States territories and possessions; between States; between places in the same State, if the goods travel through another State or a foreign country; and from a

---

[4]Both the Carmack Amendment and the FBLA were revised and recodified after Rando was injured. Congress replaced the Carmack Amendment, then 49 U.S.C. § 11707, when it enacted the Interstate Commerce Commission Termination Act of 1995, Pub. L. 104-88, 109 Stat. 803 (1995), which repealed the Interstate Commerce Act. The current 49 U.S.C. § 14706, which applies only to motor carriers, derives largely from § 11707, which applied to other carriers as well. See 1 S. Sorkin, Goods in Transit § 3.03, at 3-21 (1999). See also *id.* at §§ 1.19, 2.03, 3.03, 5.02, at 1-114 to 1-117, 2-18 to 2-21, 3-15 to 3-22, 5-13 to 5-21. In 1994, Congress repealed the Pomerene Act, 49 U.S.C. app. §§ 81-124, and replaced it with 49 U.S.C. §§ 80101-80166 (1994). "The new Act is a recodification, rewording and rearrangement of the old Pomerene Act, but in general is essentially the same." 1 S. Sorkin, Goods in Transit § 2.04, at 2-26.

None of the recent changes to the FBLA and the Carmack Amendment appear to affect the outcome of this appeal. The parties do not argue to the contrary.

State to a foreign country. See 49 U.S.C. § 80102 (1994). Because Federal law supersedes contrary State law, "[w]henever the FBLA is applicable, it rather than Article 7 controls." 3 J.J. White & R.S. Summers, *supra.* Article 7's residual scope thus appears to be confined to the transportation of goods within a State and from a foreign country to the United States.

Section 7-301 of the Uniform Commercial Code corresponds to § 23 of the UBLA, formerly G. L. c. 108, § 22. See Official Comment to § 7-301 of the Uniform Commercial Code, 2C U.L.A. 172 (Master ed. 1991). Section 7-301(5) goes beyond § 23 in providing indemnity to carriers for losses caused by inaccuracies in information furnished by shippers to carriers. See Massachusetts Code Comment to G. L. c. 106, § 7-301, Mass. Gen. Laws Ann. at 47 (West 1999) ("The provision for automatic indemnity in subsection (5) is new, and substantially increases the measure of protection available to the carrier"); 1957 Massachusetts Annotations to G. L. c. 106, § 7-301 (5), Mass. Ann. Laws, Uniform Commercial Code at 383 (Lexis 1998) ("The Code imposes an absolute liability on the shipper to indemnify the issuer against any damages caused by inaccuracies in particulars furnished by the shipper regarding the goods. Under existing law such indemnity is not specifically provided for and can be obtained only with difficulty"); New York Annotations to N.Y. U.C.C. Law § 7-301(5), at 56 (McKinney 1993) (uses language close to language of Massachusetts annotation); R. Braucher, The Uniform Commercial Code — Documents of Title, 102 U. Pa. L. Rev. 831, 844 (1954).

Subsections (1) through (4) of § 7-301 provide for the recovery of damages against the issuer of a bill of lading for "damages caused by the misdating of the bill or the non-receipt or misdescription of the goods" where the plaintiff has relied on the information contained in the bill. G. L. c. 106, § 7-301 (1). Subsection (1) allows two kinds of plaintiffs to obtain damages in such circumstances: consignees of nonnegotiable bills who have given value in good faith and holders to whom negotiable bills have been duly negotiated.[5] Subsection (1) exempts the issuer from liability to the extent that the bill accurately indicates

---

[5]The consignee of a bill of lading or other document of title is the person to whom or to whose order the document promises delivery. See G. L. c. 106, § 7-102 (1) (*b*). A document of title is nonnegotiable unless (1) by its terms the goods described therein are to be delivered to the bearer of the document or to the order of a named person; or (2) where recognized in overseas trade,

that "the issuer does not know whether any part or all of the goods in fact were received or conform to the description." Subsections (2), (3), and (4) of § 7-301 qualify this exemption in various ways. Read in context with the rest of § 7-301, subsection (5) appears specifically intended to provide a means for the issuer of a bill to receive compensation from the shipper for any damages the issuer must pay to consignees or holders of bills of lading for harm caused by the shipper's false statements.

Section 80113 of the current version of the FBLA follows the structure, but not always the substance, of § 7-301, subsections (1) through (4) (and of UBLA § 23, on which both § 80113 and § 7-301 are ultimately modeled). Subsection (a) of § 80113 makes a carrier who issues a bill of lading liable for nonreceipt or misdescription of goods. Subsections (b), (c), and (d) exempt the carrier from liability when the carrier is ignorant of the statements made in the bill and the bill indicates the carrier's ignorance in this regard. Some of these provisions differ from the corresponding provisions of § 7-301. Subsection (c) of § 80113, for instance, lacks the final sentence of subsection (4) of § 7-301, to which subsection (c) seems otherwise identical. Subsections (d)(1) and (d)(2), by contrast, appear to be identical in substance to subsections (3) and (2) respectively of § 7-301. Compare 49 U.S.C. §§ 100-102 (1994).

What is missing from § 80113, and from the rest of the FBLA, is any remedy for carriers against shippers that might correspond to the indemnity provided by § 7-301 (5). We do not consider the omission the result of inadvertence on Congress's part. When Congress took the opportunity in 1994 to revise and recodify the FBLA, it made a slight change to what is now § 80113(b) "to conform" with § 7-301. Revision Notes and Legislative Reports, 1994 Acts, H.R. Rep. No. 103-180 (1994), quoted in 49 U.S.C.A. § 80113 (West 1997).

The FBLA clearly preempts subsections (1) through (4) of § 7-301 as to interstate commerce. It would seem anomalous to argue that the FBLA does not similarly preempt § 7-301 (5). See, e.g., *Sylgab Steel & Wire Corp.* v. *Strickland Transp. Co.,*

---

the document runs to a named person or assigns. See G. L. c. 106, § 7-104. Section 1-201 (20) defines a holder of a document of title as a person in possession if the goods are deliverable to the bearer or to the order of the person in possession. Section 7-501 (4) specifies what makes a document of title duly negotiated.

270 F. Supp. 264, 270 (E.D.N.Y. 1967) ("State and [F]ederal courts have properly been reluctant to divide the relationship between interstate shippers and carriers into discrete parts, some governed by [F]ederal and some by [S]tate law"). NEMF, however, contends that the FBLA preempts only some of the bills of lading provisions of Article 7, and that each particular subsection of these provisions should be examined for whether it conflicts with any particular provision of the FBLA. We disagree. The cause of uniformity, not to mention that of efficiency, would not be aided were courts to require parties to an interstate shipping contract to determine subsection by subsection whether individual sections or components of sections of Article 7 are preempted. The drafters of Article 7 appear to have agreed. See 1957 Massachusetts Annotations to G. L. c. 106, § 7-101, Mass. Ann. Laws, Uniform Commercial Code at 317 (Lexis 1998) (Article 7's "provisions as to bills of lading are displaced by the Federal Bills of Lading Act . . . as to bills of lading issued by common carriers for interstate shipments and exports to foreign countries"). So have leading commentators. See, e.g., 3 J.J. White & R.S. Summers, Uniform Commercial Code § 29-2, at 324; R.A. Riegert & R. Braucher, Documents of Title 1 (Article 7 "governs only intrastate, and possibly import, shipments because interstate and export shipments are governed by [F]ederal law"); 2 T.J. Schoenbaum, Admiralty & Maritime Law 47-48 (2d ed. 1994) ("The Pomerene Act thus governs bills of lading issued in the United States or its territories in interstate or foreign commerce, and [S]tate law is superseded"); G. Gilmore & C.L. Black, Admiralty 96 (2d ed. 1975) ("Bills [of lading] issued in the United States or its territories in connection with transactions involving interstate or foreign commerce continue to be governed by the Pomerene Act, so that Article 7 is technically irrelevant"). In short, we think the FBLA and the bills of lading provisions of Article 7 are mutually exclusive enactments. See *Chrysler Corp.* v. *Adamatic, Inc.*, 59 Wis. 2d 219, 234 (1973), overruled on other grounds, *Daniel* v. *Bank of Hayward*, 144 Wis. 2d 931 (1988). But see *Carna* v. *Bessemer Cement Co.*, 558 F. Supp. 706, 708 (W.D. Pa. 1983) ("Article Seven of the Code governs those questions regarding bills of lading which are not covered by federal law").

We do not mean to imply that Federal law forbids the States latitude to define the scope and allocation of liability for

personal injuries caused by persons who happen to be engaged in the interstate transportation of goods. Allite does not so argue. See *Chicago, R.I. & P. Ry.* v. *Maucher*, 248 U.S. 359, 363 (1919) (negligence action resting "not upon a contract of carriage, but upon the general right of a human being not to be injured by the negligence of another" is not preempted by Carmack Amendment); *Rini* v. *United Van Lines, Inc.*, 104 F.3d 502, 507 (1st Cir.), cert. denied, 522 U.S. 809 (1997) ("Because the Carmack Amendment was intended to provide uniformity to claims for the loss [of] or damage to goods, the goal of uniformity is not frustrated by the allowance of [S]tate law claims for injuries that are separate and distinct from such loss or damage"); *Hairston Motor Co.* v. *Newsome*, 253 Va. 129, 134-135 (1997) (Carmack Amendment does not preempt shipper's common-law conversion claim against carrier's insurer for wrongful sale of shipper's goods after goods were damaged during shipment). A State law provision specifically defining the scope of indemnity arising from a bill of lading, however, is another matter. Unlike the generally applicable right of contribution provided in G. L. c. 231B, the right to indemnity provided in § 7-301 (5) accrues only when damage is caused by inaccuracies in a bill of lading. Section 7-301 (5) creates no obligation in any context other than the relationship between shipper and carrier as governed by the bill. Its sole effect is to alter the balance, created by the Federal scheme, of obligations arising from the bill.

3. *The scope of the indemnity created by § 7-301 (5)*. The outcome of this case would be the same if subsection (5) of § 7-301 were not preempted. The indemnity created by subsection (5) does not extend to tort claims for personal injuries. The subsection must be read in light of the text, structure, and purposes of § 7-301 and of Article 7 as a unit. Section 7-301 (1) allows only consignees of nonnegotiable bills who have given value in good faith, and holders of negotiable bills, to sue issuers for damages arising from the nonreceipt or misdescription of goods, and only if they have relied upon a bill's description of goods. Others are not entitled to sue under the provision. See *G.A.C. Commercial Corp.* v. *Wilson*, 271 F. Supp. 242, 246-247 (S.D.N.Y. 1967). Subsections (2) through (4) further define the scope of the liability set out in subsection (1). Although subsection (5), the section's final subsection, does not explicitly refer back to the prior subsections in the section, the subsection cre-

ates indemnity only for damage caused by inaccuracies in the description of the shipment. The "damage" to the carrier specified in subsection (5) corresponds with the "damages" to the consignee or holder specified in subsection (1).[6] We think, then, that the indemnity provided by subsection (5) is intended to accrue only for "damage" caused to the carrier by suits by consignees and holders of bills of lading for damages brought pursuant to subsection (1). The indemnity does not accrue for damage caused by other suits.[7]

Even if we thought the indemnity provided by subsection (5) was somehow broader, we should have no reason to believe that it extended to personal injuries. Article 7 was intended to facilitate the use of "a class of commercial paper representing commodities in storage or transportation." Official Comment to § 7-104 of the Uniform Commercial Code, 2C U.L.A. 120 (Master ed. 1991). Cf. G. L. c. 106, § 1-102 (2) ("[u]nderlying purposes and policies" of Code are "(a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; [and] (c) to make uniform the law among the various jurisdictions"). Like the rest of the Uniform Commercial Code, Article 7 leaves to other laws the allocation of liability for noncommercial harms. See G. L. c. 106, § 1-103 ("Unless displaced by the particular provisions of this chapter, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress,

---

[6] The "damages" in subsection (1) also include damages caused by the misdating of the bill or the nonreceipt of the goods. Presumably subsection (5) does not require shippers to indemnify carriers for misdating and nonreceipt because it is issuers of bills of lading, not shippers, who are responsible for dating the bills and delivering the goods described in them.

[7] The Official Comment to § 7-301 contains two cross references to other sections in Article 7. See Official Comment to § 7-301 of the Uniform Commercial Code, 2C U.L.A. 173 (Master ed. 1991). One of those sections, § 7-203, imposes liability on issuers of documents of title other than bills of lading for damages caused by the nonreceipt or misdescription of goods. The other section, § 7-309, defines the standard of care required of issuers of bills of lading. (Section 7-309 also states principles applicable to contractual provisions limiting carrier liability and specifying the procedure for bringing claims based on a shipment.) The carrier must "exercise the degree of care *in relation to the goods* which a reasonably careful [person] would exercise under like circumstances" (emphasis added). G. L. c. 106, § 7-309 (1). No duty of care is stated with regard to anything other than goods.

coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions").[8] Put otherwise, Article 7 does not displace ordinary remedies for personal injuries. National Union is unable to show us, and we are unable to find, any other provision of Article 7 that conceivably could be read to allocate liabilities for such injuries.

*Judgment affirmed.*

---

[8]The final sentence of § 7-301 (5), which states that an issuer's right to indemnity from a shipper "shall in no way limit his responsibility and liability under the contract of carriage to any person other than the shipper," should not be read as implying the contrary. "Any person" might be taken to imply that the section contemplates the possibility of liability for a wide range of actions. But the liability contemplated by the sentence is liability "under the contract of carriage." Claims for negligence and loss of consortium are not claims "under the contract."