[No. B145204. Second Dist., Div. Five. Jan. 10, 2002.]

BII FINANCE COMPANY LTD., Plaintiff and Respondent, v.
U-STATES FORWARDING SERVICES CORP., Defendant and
Appellant.

COUNSEL

Lim, Ruger & Kim and Bryan King Sheldon for Plaintiff and Respondent.

Robert S. Kostrenich for Defendant and Appellant.

OPINION

MOSK, J.—

### INTRODUCTION

Defendant U-States Forwarding Services Corp. (U-States), appeals a judgment against it in favor of plaintiff BII Finance Company Ltd. (BII) in the amount of $74,060.76, plus costs in the amount of $7,069.57 and attorneys' fees in the amount of $30,222.07. Judgment was entered following a court trial. The parties waived the statement of decision. BII, the shipper's assignee, prevailed on its claim that U-States, the shipping carrier, was liable for delivering goods without requiring surrender by the purchaser of the original bills of lading. In this case, the purchaser had not paid for the goods. The judgment was also entered against Primaline, Inc. (Primaline), the shipping carrier's agent, pursuant to a default. Primaline does not appeal.

A bill of lading that is consigned "To Order," without designating a named person, arguably may not be a negotiable document under California Uniform Commercial Code section 7104, subdivision (1). If it is not, the bill

of lading nonetheless should be treated as a negotiable document under California Uniform Commercial Code section 7104, subdivision (3) in this case. The trial court correctly found that U-States was liable to BII, the holder by due negotiation of the bills of lading at issue, because U-States delivered the goods covered by those bills at the instruction of a party who was not such a holder, to a party who also was not such a holder. In addition, there was substantial evidence to support the trial court's finding that BII's acceptance of partial payment from the party that received the goods did not relieve U-States of liability for the remainder of the amount owed. Accordingly, we affirm the judgment.

## BACKGROUND

On June 5 and 6, 1997, Primaline, a shipping company that acted as agent for U-States (a California corporation), issued four bills of lading in favor of Shineworld Industrial Limited (Shineworld), a Hong Kong manufacturer and exporter of garments. Although the goods covered by the bills of lading (cartons of jackets) were to be shipped to the buyer, Jacobs & Turner, Ltd. (Jacobs & Turner) in Glasgow, Scotland, the goods were consigned simply "To ORDER," without specifying any name or person.

Jacobs & Turner agreed to pay by letter of credit approximately US $200,000 for the goods covered by the bills of lading. (The amounts at issue were in Hong Kong dollars. Here, the amounts are specified in United States dollars because the parties did so. Those amounts are expressed in approximations, also because the parties did so—presumably due to fluctuating exchange rates.) Shineworld assigned each bill of lading to BII, a commercial Hong Kong bank, for a loan of approximately US $200,000.

The goods were placed on a vessel in early June 1997 and arrived in the United Kingdom in July 1997. While the goods were in transit, BII sent the shipping documents (including the bills of lading) to Jacobs & Turner's bank, Clydesdale Bank PLC, in Glasgow, Scotland, and requested payment under the letter of credit. On June 25, 1997, Clydesdale Bank gave notice to BII that because the bank had found discrepancies between the letter of credit and the shipping documents sent to it by BII, the bank would not release the funds to BII until the buyer, Jacobs & Turner, consented to a waiver of the discrepancies. BII then notified Shineworld of the claimed discrepancies, and Shineworld responded that it would contact Jacobs & Turner about the matter.

Shineworld apparently did not have any further communications with BII about the shipment. Sometime later, in September 1997, BII learned that the

goods had been released to Jacobs & Turner at Shineworld's direction, even though BII had not been paid for the goods. In fact, on July 15, 1997, Shineworld had inexplicably sent a letter to Primaline requesting that it release the goods to Jacobs & Turner without requiring surrender of the original bills of lading. This request or instruction was not noted on the bills of lading because Shineworld had already transferred them to BII.

As a result of the communication from Shineworld, U-States (by its agent, Primaline)[1] released the goods to Jacobs & Turner on July 15, 1997, without the surrender of the original bills of lading. There is no indication that Jacobs & Turner had waived the claimed discrepancies under the letter of credit or had paid for the goods.

U-States had no knowledge that Shineworld had assigned the original bills of lading to BII at the time U-States released the goods to Jacobs & Turner. BII did not know of Shineworld's letter instructing U-States to release the goods to Jacob & Turner until September 1997, after the goods had been released, and had not authorized the release of the goods.

BII could not recover from Shineworld because Shineworld had no ascertainable assets. BII claimed against Jacobs & Turner, which party asserted that the goods were defective, although there was a certificate from the inspector of the goods at the place of delivery that the goods were not defective. BII and Jacobs & Turner agreed that, as a settlement between them, Jacobs & Turner would pay to BII 65 percent of the goods' total agreed price, and that amount was paid.

After BII was told by U-States that Primaline had no authority to issue bills of lading as U-States' agent, BII brought an action in Hong Kong against Primaline. That action was dismissed based on evidence produced by Primaline that indicated that Primaline acted as agent for U-States. BII then sought the unpaid amount of the original contract price from U-States in this case.

Alleging causes of action for breach of contract and conversion, BII asserted that U-States' delivery of the goods to Jacobs & Turner without the surrender of the original bills of lading was a misdelivery for which U-States is liable in damages to BII. BII relied on the bills of lading that were consigned "To ORDER" and on what it deemed to be the applicable law. U-States contended that the bills of lading should be read to have permitted

---

[1]Reference to the delivery by and knowledge of U-States includes such delivery and knowledge by its agent, Primaline.

the delivery it made. U-States also argued that the payment from Jacobs & Turner constituted an accord and satisfaction, in effect releasing U-States from any liability.

The trial court found that Primaline acted as agent for defendant U-States (U-States concedes this on appeal), that Primaline—and therefore U-States—misdelivered the goods, that BII made proper efforts to mitigate its damages, and that therefore the unpaid portion of the obligation was not extinguished. The trial court rendered a judgment in favor of the plaintiff for the unpaid amount, plus costs and attorneys' fees.

U-States appeals from the judgment.

## DISCUSSION

On appeal, U-States argues that it is not liable to BII for delivering the goods to Jacobs & Turner without requiring surrender of the original bills of lading because the bills of lading should be interpreted to give U-States the option to require or not require such surrender without liability to the holder of the original bills of lading. U-States also argues that BII's acceptance from Jacobs & Turner of 65 percent of the agreed price of the goods constituted an accord and satisfaction and extinguished any obligation for the unpaid portion of the agreed price.

The judgment of the trial court is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) Where, as here, the findings were waived, we assume that the court found all facts necessary to support the judgment. (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 140 [80 Cal.Rptr.2d 126].) To the extent there is any disputed factual issue, we determine whether the trial court's determination is supported by substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].) When the trial court's determination is not based on conflicting evidence, we are confronted with questions of law that we review independently. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

The trial court's decision that there was a misdelivery for which U-States is liable is not dependent on conflicting evidence. Therefore, we review that legal determination independently. We review the trial court's decision that there was no accord and satisfaction on the basis of whether there was substantial evidence to support that conclusion.

*The Transaction*

Bills of lading have long been used in international sales transactions as one means to protect the interests of sellers, who want assurance of being

paid for goods shipped by a carrier, and buyers, who do not want to pay for goods until they arrive. They also are used as a means to facilitate credit arrangements and to reflect title in goods being shipped by a carrier. (See Gilmore & Black, The Law of Admiralty (2d ed. 1975) §§ 3-1, 3-4, pp. 93-94, 96-98.)

The bill of lading constitutes a receipt for the goods shipped, a contract for their carriage, and a document of title. (*Pioneer Fruit Co. v. Southern Pac. Co.* (1920) 47 Cal.App. 44, 46 [190 P. 50]; *Internatio, Inc. v. M/V Yinka Folawiyo* (E.D.Pa. 1979) 480 F.Supp. 1245, 1251; see also Dolan, The Law of Letters of Credit (rev. ed. 1999) ¶ 1.07[1][c]; 2 Colinvaux, Carver's Carriage by Sea (13th ed. 1982) ¶¶ 1596, 1623-1624, pp. 1113-1114, 1134-1136; Gilmore & Black, The Law of Admiralty, *supra*, at § 3-1.) It describes the goods shipped, identifies the shipper (or consignor) and the buyer (consignee) and directs the carrier to deliver the goods to a specified location or person. As a contract of carriage drafted by the carrier, a bill of lading is strictly construed against the carrier. (See *C-ART, Ltd. v. Hong Kong Islands Line America, S.A.* (9th Cir. 1991) 940 F.2d 530, 532, and cases cited therein.)

■ A negotiable bill of lading, in effect, requires delivery to the bearer of the bill or, if to the order of a named person, to that person. (A person includes an individual or an organization. Cal. U. Com. Code , § 1201, subd. (30).) A nonnegotiable bill of lading is one in which the consignee is specified. (See 3 White & Summers, Uniform Commercial Code (4th ed. 1995) § 29-4, p. 354; *Met-Al Inc. v. Hansen Storage Co.* (E.D.Wis. 1993) 828 F. Supp. 1369, 1375; see also 2 Schoenbaum, Admiralty and Maritime Law (3d ed. 2001) § 10-11, at p. 62.) If the bill of lading is negotiable, the holder of the original bill can negotiate it by indorsing and delivering it to another or, when it is indorsed in blank or to bearer, by delivery alone. (Cal. U. Com. Code, § 7501; 1 Colinvaux, Carver's Carriage by Sea, *supra*, at ¶ 90, pp. 63-64.) An indorsee is the holder and, in effect, holds title to the goods covered by the bill. (Cal. U. Com. Code, § 7502, subd. (b); 2 Colinvaux, *supra*, at ¶ 1597, p. 1114.)[2]

In a typical international transaction, once the buyer and seller have agreed on terms, the buyer (in this case, Jacobs & Turner) obtains a letter of credit with its bank (here, Clydesdale Bank in Scotland) in favor of the seller

---

[2]The party to whom a bill of lading had been duly negotiated is sometimes referred to as a "holder in due course." That term is defined in division 3 of the California Uniform Commercial Code (at § 3302), which governs commercial paper, rather than in division 7, which governs documents of title such as bills of lading.

(here, Shineworld). The seller (generally referred to as the shipper) delivers the goods to a carrier (here, U-States through its agent Primaline). The carrier issues a bill of lading, usually in duplicate sets, and gives the original bill of lading to the shipper. (See Dolan, The Law of Letters of Credit, *supra*, at ¶¶ 1.01[2]-1.01[3].)

The shipper issues a draft or other document directing the buyer to pay the purchase price to the shipper or the shipper's nominee. The shipper or its nominee then presents the draft and the bill of lading (made to the order of or indorsed to the buyer) to the buyer's bank for payment. (Dolan, The Law of Letters of Credit, *supra*, ¶¶ 1.01[2]-101[3]; see also Gilmore & Black, The Law of Admiralty, *supra*, at § 3-9, pp. 110-112.)

The buyer's bank compares the draft and bill of lading against the letter of credit to ensure there are no discrepancies between them. If none is found, the bank pays the shipper or its nominee and forwards the original bill of lading to the buyer, who presents it to the carrier to obtain delivery of the goods. If the bank finds discrepancies between the letter of credit and the shipper's documents, as it did here, the bank notifies the shipper, who may ask the buyer to waive the discrepancies. If the buyer agrees to such a waiver, the bank pays the shipper and forwards the bill of lading to the buyer, who presents it to the carrier for delivery of the goods. If there is no waiver, the original bill of lading is returned to the shipper and the transaction is cancelled. (Dolan, The Law of Letters of Credit, *supra*, at ¶¶ 1.07[1][c], 6.06[2].)

 The transaction at issue in this case essentially was initiated as we describe, in that Jacobs & Turner obtained a letter of credit to purchase goods from Shineworld, Shineworld delivered the goods to U-States' agent for shipment to Jacobs & Turner, and U-States (through its agent, Primaline) issued bills of lading and gave them to Shineworld. Shineworld then indorsed the bills of lading to BII in exchange for a loan by BII to Shineworld in the amount that was covered by the amount owed by the buyer, Jacobs & Turner. Therefore, BII, rather than Shineworld, presented the original bills of lading to Clydesdale Bank for payment. When the bank found discrepancies that Jacobs & Turner did not waive, the bank returned the original bills of lading to BII.

*Law Applicable to Bills of Lading*

With regard to issues concerning the bills of lading at issue in this case, we apply (as do the parties) California law, in accordance with the terms of

the bills of lading that were issued by U-States, a California corporation.[3] (See Cal. U. Com. Code, § 1105, subd. (1).) The bills of lading also incorporate by reference the Carriage of Goods by Sea Act, 46 United States Code section 1300 et seq., and the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading signed at Brussels, August 25, 1924 as amended by the "protocol" signed at Brussels February 23, 1968 (Visby Rules or Hague-Visby Rules).

█ Although the Federal Bills of Lading Act (49 U.S.C. §§ 80101-80116), when applicable, preempts much of the application of division 7 of the California Uniform Commercial Code (U.S. Const., art. VI, cl. 2; Cal. U. Com. Code, § 7103), the act applies only to interstate and foreign commerce in which the goods travel through one of the states of the United States. (49 U.S.C. § 80102; see also *National Union Fire Ins. Co. v. Allite, Inc.* (2000) 430 Mass. 828, 831-833 [724 N.E.2d 677, 679-681], citing 3 White & Summers, Uniform Commercial Code, *supra*, § 29-2, p. 324.) Because the goods in this case did not travel through the United States, the Federal Bills of Lading Act does not supersede California law here.

*Negotiability of the Documents*

█ California Uniform Commercial Code section 7104 governs whether a document of title, such as a bill of lading, is negotiable or nonnegotiable. Under subdivision (1), a bill of lading is negotiable: "(a) If by its terms the goods are to be delivered to the bearer or to the order of a named person; or [¶] (b) Where recognized in overseas trade, if it runs to a named person or assigns." (Cal. U. Com. Code, § 7104, subd. (1).) Subdivision (2) provides that "[a]ny other document is nonnegotiable." (Cal. U. Com. Code, § 7104, subd. (2).) Subdivision (3), however, provides that a nonnegotiable bill of lading "must be conspicuously (Section 1201) marked 'nonnegotiable,' " and if it is not so marked, "a holder of the document who purchased it for value supposing it to be negotiable may, at his option, treat such document as imposing upon the bailee the same liabilities he would have incurred had the document been negotiable." (Cal. U. Com. Code, § 7104, subd. (3).)

The bills of lading in this case were consigned "To ORDER." They were not to the order of any specific person or entity; nor did they specifically provide for delivery of the goods to the bearer. Therefore, the bills of lading do not appear to fall within the scope of subdivision (1) as negotiable.

BII argues, however, that the "To ORDER" bills of lading are negotiable because they may be interpreted as consigned to bearer, citing to California

---

[3] There is no indication that any other law that might apply in this case is inconsistent with California law.

Uniform Commercial Code section 3109, subd. (a). That section, which provides that a "promise or order is payable to bearer if it . . . [d]oes not state a payee," does not apply here.

Section 3109 is found in division 3 of the California Uniform Commercial Code, which division governs specified commercial paper, rather than in division 7, which division governs documents of title such as bills of lading. The treatment of commercial paper in division 3 of the California Uniform Commercial Code does not override division 7's treatment of documents of title such as the bills of lading in this case. (See Cal. U. Com. Code, com. 2, 23B West's Ann. Cal. U. Com. Code (1964 ed.) foll. § 3102, p. 11.)

Authorities in other jurisdictions suggest that there should be a broad interpretation of negotiability and that documents of title need not contain the exact words specified in Uniform Commercial Code section 7-104 for negotiability. (See *Bank of New York v. Amoco Oil Co.* (S.D.N.Y. 1993) 831 F.Supp. 254, affd. (2d Cir. 1994) 35 F.3d 643; *In re George B. Kerr, Inc.* (Bankr. D.S.C. 1981) 25 B.R. 2, affd. (4th Cir. 1982) 696 F.2d 990.) These authorities are distinguishable because they dealt with situations in which the word "Order" was not used or not used precisely. None of those authorities involved a nonbearer instrument that did not specify the person to whom the "Order" was made.

In one authority, Hawkland, Uniform Commercial Code Series, section 7-104:01, article 7, page 27, it is stated, "subsection 7-104(1) specifies words of negotiability that must be included in the terms of a document of title in order to make the document negotiable. Consequently, a document of title that fails to include words of negotiability in its terms is nonnegotiable." The statutory words of negotiability include that the order be to a "named person."

Despite the specific words of negotiability required by California Uniform Commercial Code section 7104, subdivision (1), BII asserts the bills of lading were negotiable because U-States' president testified that a person in possession of an original bill of lading is entitled to possession of the goods it covers. Although it does not appear that the intent of a party bears on negotiability under subdivision (1) (see, e.g., *Bank of New York v. Amoco Oil Co., supra,* 831 F.Supp. at p. 264), the parties' intent is relevant under California Uniform Commercial Code section 7104, subdivision (3) to the treatment as negotiable of a nonnegotiable bill of lading that is not conspicuously marked "nonnegotiable."

Subdivision (3) is a California addition to the Uniform Commercial Code. (See Cal. U. Com. Code, com. 6, 23C West's Ann. Cal. U. Com. Code (1990

ed.) foll. § 7104, p. 12; Hawkland, Uniform Commercial Code Series, *supra*, § 7-104, art. 7, p. 26.) As noted above, that section provides that, if a nonnegotiable bill of lading is not conspicuously marked "nonnegotiable," a holder who purchased the bill of lading for value "supposing it to be negotiable" may treat the bill of lading as imposing upon the bailee (in this case, U-States) the same liabilities it would have incurred had the document been negotiable. (Cal. U. Com. Code, § 7104, subd. (3).) Therefore, even if the bills of lading in this case were not negotiable under subdivision (1), they may be treated as negotiable if BII purchased them for value supposing them to be negotiable, because the bills of lading were not marked "nonnegotiable."

U-States asserts that BII did not purchase the bills of lading for value because it says that the transaction was a "post-shipment financing." Yet, BII advanced moneys to the shipper, Shineworld, against the shipping documents, thereby, in effect, purchasing the bills of lading for value. The evidence is that the parties considered the bills of lading to be negotiable, and BII has elected to treat the bills of lading as negotiable. Accordingly, under California Uniform Commercial Code section 7104, subdivision (3), if the bills of lading are not actually negotiable, U-States has the same liabilities by virtue of the documents it would have incurred had the bills of lading been negotiable.

*Improper Delivery of Goods*

The parties do not dispute that U-States delivered the goods to someone who did not surrender the original bills of lading. U-States argues that it cannot be held liable for improper delivery based upon its failure to require surrender of the bills of lading because there is no express term requiring surrender as a precondition to delivery.

The absence of an express term requiring surrender of the original bill of lading does not absolve U-States of liability. That a bill of lading is negotiable means that under the law, with some exceptions not relevant here, its surrender is required in exchange for the goods covered and shipped by that bill of lading. (See Cal. U. Com. Code, § 7403, subd. (3); U. Com. Code com., 23C West's Ann. Cal. U. Com. Code, *supra*, foll. § 7403, pp. 80-81 ["1. The general and primary purpose of this revision is to simplify the statement of the bailee's obligation on the document. . . . [¶] . . . [¶] 5. Subsection (3) states the obvious duty of a bailee to take up a negotiable document . . . and the result of failure in that duty."]; see also *Pere Marquette Ry. v. French & Co.* (1921) 254 U.S. 538, 546 [41 S.Ct. 195,

198-199, 65 L.Ed. 391]; Cal. U. Com. Code, § 7303; Riegert & Braucher, Documents of Title (3d ed. 1978) § 2.4, p. 30 [explaining that when a document is negotiable, "the bailee is under a duty not to deliver the goods without surrender of the document"].) Indeed, the duty of the carrier to "take up" the original negotiable bill of lading in exchange for delivery of the goods it covers is necessary to fulfill the purpose of a bill of lading that is negotiable. (See, e.g., *Schaefer, Inc. v. Minneapolis, N. & S. Ry. Co.* (1959) 254 Minn. 248, 255 [94 N.W.2d 551, 557].)

U-States contends that the requirement of surrender of the original bills of lading should not be applied in this case because the bills of lading include a provision that states: "If required by the Carrier [U-States] one (1) original Bill of Lading must be surrendered duly endorsed in exchange for the Goods or delivery order." U-States contends this provision gives it the option to require or not require surrender of the original bill of lading as a condition of delivery.

That provision did not eliminate U-States' duty to ensure delivery of the goods to the proper party, *i.e.*, the holder of the original bill of lading or someone to whom the holder directs delivery. The provision simply made clear that U-States may require surrender of the original bill of lading, which requirement allows U-States to protect itself from liability by ensuring that the party to whom it delivers the goods is entitled to them. Because of this provision, U-States did not have to comply with Shineworld's request to deliver the goods to Jacob & Turner without surrender of the original bills of lading. The clause did not absolve U-States of liability for misdelivery to a party not entitled to the goods.

Delivery to a person who is not the holder, without the holder's authorization, constitutes a conversion of the goods and a breach of contract. (*Pere Marquette Ry. v. French & Co., supra,* 254 U.S. at p. 546 [41 S.Ct. at p. 199] ["Where the failure to require the presentation and surrender of the bill is the cause of the shipper losing his goods, a delivery without requiring it constitutes a conversion."], and cases cited therein; see also *Allied Chemical v. Companhia de Navegacao* (2d Cir. 1985) 775 F.2d 476, 484-485 [carrier that delivered goods to consignee without requiring surrender of bill of lading liable for breach of contract where consignee did not hold bill of lading because it had not yet paid for goods]; 2 Colinvaux, Carver's Carriage by Sea, *supra*, at ¶ 1593 p. 1111 ["Delivery to a person not entitled to the goods without production of the bill of lading is prima facie a conversion of the goods and a breach of contract (Fn. omitted)."].)

U-States relies on *Chilewich Partners v. M.V. Alligator Fortune* (S.D.N.Y. 1994) 853 F.Supp. 744, in arguing that liability cannot be imposed for

misdelivery when the carrier delivers goods at the direction of the shipper without requiring surrender of the original bill of lading. In *Chilewich*, the United States District Court found that the defendant carriers in that case were not liable to the plaintiff shipper when they delivered goods covered by bills of lading to bonded warehouses located at the buyer's factory, without requiring surrender of the original bills of lading. *Chilewich* is distinguishable.

The transaction in *Chilewich* was a type of transaction commonly used in the Korean hide trade, in which the shipper, carrier, and buyer agree in advance that the goods will be delivered to a government-controlled warehouse before payment is made and the original bill of lading surrendered. (*Chilewich Partners v. M.V. Alligator Fortune*, *supra*, 853 F.Supp. at pp. 748-749, 752-753.) In contrast, in the transaction here, there was no agreement that the goods would be delivered to anyone before payment was made and the bills of lading surrendered. Moreover, unlike the circumstances in *Chilewich*, in which the agreement not to require surrender of the bills of lading was made by the shipper at a time when it was in effect the holder of the bill of lading (*id.* at pp. 749, 752-753, 755), here Shineworld's instruction to deliver without requiring surrender of the bills of lading was made when it no longer was the holder of the bills of lading.

Although a carrier may *choose* to follow a shipper's instruction to deliver goods covered by a negotiable bill of lading or its equivalent without requiring surrender of the original bill, the carrier does so at its own peril because (as happened in this case) the shipper may have negotiated the bill before giving that instruction. If the carrier delivers to a party not entitled to possession of the goods, that carrier is liable to the holder of the original bill of lading. (See *C-ART, Ltd. V. Hong Kong Islands Line America, S.A.*, *supra*, 940 F.2d 530; *Allied Chemical v. Companhia de Navegacao*, *supra*, 775 F.2d 476.)

U-States chose to comply with Shineworld's instruction without determining whether Shineworld was the proper holder of the bills of lading and whether Jacobs & Turner was the party with the right of possession of the goods. Thus, U-States, without requiring the original bills of lading, assumed the risk that neither party had the right to possession and that it would be liable to the holder of the bills of lading by due negotiation. The trial court correctly determined that because BII was the holder of the bills of lading by due negotiation, U-States' misdelivery of the goods to Jacobs & Turner renders U-States liable to BII.

## No Accord and Satisfaction

■ U-States argued at trial that it is not liable to BII for any amount because BII's acceptance of partial payment from Jacobs & Turner constituted an accord and satisfaction. The trial court did not find that there had been an accord and satisfaction, but rather found that the agreement for partial payment by Jacobs & Turner to BII constituted an effort by BII to mitigate its damages. U-States challenges that finding on appeal.

■ Although U-States did not comply with the requirement that accord and satisfaction be pleaded as an affirmative defense (in fact, U-States first raised this defense in its written closing argument filed several weeks after close of evidence), there is an exception to that requirement. That exception, which is applicable here, allows the defendant to rely on plaintiff's evidence of payment to attempt to establish an accord and satisfaction. (*Riskas v. De La Montanya* (1956) 145 Cal.App.2d 636, 639-640 [302 P.2d 821].)

■ Both U-States and BII rely upon California law in connection with their positions on the issue of an accord and satisfaction. The agreement that U-States contends is an accord and satisfaction was between Jacobs & Turner (in Scotland) and BII (in Hong Kong) involving acts that took place in the United Kingdom—either Southampton or Glasgow. U-States, which seeks to take advantage of the transaction, is a California corporation, and the bills of ladings that are the subject of the dispute contain California choice-of-law provisions. As both parties have asserted that California law should apply because of the choice-of-law clause in the bills of lading, and as there is no indication that the laws of the other jurisdictions are not consistent with California law, we apply California law.

■ "The question whether an agreement amounts to an accord and satisfaction is one of the intention of the parties and is therefore a question of fact." (*Conderback, Inc. v. Standard Oil Co.* (1966) 239 Cal.App.2d 664, 680 [48 Cal.Rptr. 901].) The party asserting this defense bears the burden of establishing the accord and satisfaction. (*Rabinowitz v. Kandel* (1969) 1 Cal.App.3d 961, 965 [81 Cal.Rptr. 897].)

A defendant asserting the defense of accord and satisfaction must establish "(1) that there was a 'bona fide dispute' between the parties, (2) that the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim, and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue." (*Thompson v. Williams* (1989) 211

Cal.App.3d 566, 571 [259 Cal.Rptr. 518].) ▮▮▮ U-States failed to present evidence of the terms of the agreement between BII and Jacobs & Turner and therefore did not establish the parties' intent that Jacobs & Turner's payment was to be in full satisfaction of BII's claim under the bills of lading.

There is evidence BII intended that its acceptance of moneys was only to mitigate its damages. BII's managing director and chief executive officer testified that when BII accepted the partial payment from Jacobs & Turner, it retained the original bills of lading. BII then sought the remainder of the amount owed under the bills of lading from Primaline and U-States.

Civil Code section 1474 ("[p]erformance of an obligation, by one of several persons who are jointly liable under it, extinguishes the liability of all"), is not applicable because there is no showing that Jacobs & Turner performed the entire obligation, which performance is required by that provision to eliminate the whole liability. (See *Giordano v. American Fidelity & Cas. Co.* (1950) 97 Cal.App.2d 309, 313 [217 P.2d 444].)

There was substantial evidence to support the trial court's determination that Jacobs & Turner's partial payment did not extinguish BII's claim against U-States.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to BII.

Turner, P. J., and Grignon, J., concurred.